## CASE NO. 23-4606

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN ARTHUR WIGGINS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT

## JOINT APPENDIX - VOLUME I OF II
## (Pages 1 - 131)

Mirriam Z. Seddiq
SEDDIQ LAW FIRM
P. O. Box 1127
Rockville, MD  20850
301-513-7832
mirriam.seddiq@seddiqlaw.com

Christopher M. Sarma
Kelly O. Hayes
OFFICE OF THE U.S. ATTORNEY
Southern Division, Suite 800
6406 Ivy Lane
Greenbelt, MD 20770
301-344-4431
christopher.sarma@usdoj.gov
kelly.hayes@usdoj.gov

*Counsel for Appellant*

*Counsel for Appellee*

## **TABLE OF CONTENTS**

## **VOLUME I OF II**

<u>JA Page</u>

District Court Docket [8:22-cr-00430-PX-1] ............................................................1

Indictment
    2022.12.14 [ECF1] ................................................................ 8

Superseding Indictment
2023.03.08 [ECF19].................................................................11

Transcript of Arraignment Plea Rule 11 Hearing
Before the Honorable Paula Xinis
    2023.05.31 [ECF52] ............................................................ 17

Plea Agreement
    2023.05.31 [ECF28] ............................................................ 56

Government's Memorandum in Aid of Sentencing
    2023.08.24 [ECF39] ............................................................ 68

Transcript Sentencing Hearing
Before the Honorable Paula Xinis
    2023.09.07 [ECF53] ............................................................ 80

Judgment in a Criminal Case
2023.09.08 [ECF45] ............................................................ 124

Notice of Appeal
    2023.09.21 [ECF47] ............................................................ 131

## **TABLE OF CONTENTS**

## **VOLUME II OF II - SEALED**

JA Page

Sealed Supplement to Plea Agreement
2023.05.31 [ECF29] ........................................................................ 132

Presentence Investigation Report
2023.07.24 [ECF34] ........................................................................ 133

Defendant's Memorandum in Aid of Sentencing
2023.08.24 [ECF41] ........................................................................ 159

 Ex. A: Sealed Documents [ECF41-1] ........................................ 174

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

<span style="color:blue">APPEAL,CLOSED</span>

# U.S. District Court
## District of Maryland (Greenbelt)
## CRIMINAL DOCKET FOR CASE #: 8:22-cr-00430-PX-1

Case title: USA v. Wiggins

Date Filed: 12/14/2022

Date Terminated: 09/08/2023

---

Assigned to: Judge Paula Xinis

Appeals court case number: 23-4606
USCA

**Defendant (1)**

**John Arthur Wiggins**
*TERMINATED: 09/08/2023*

represented by **John Michael McKenna**
Brennan McKenna & Lawlor, Chtd.
6305 Ivy Lane
Suite 700
Greenbelt, MD 20770
301-474-0044
Email: jmckenna@brennanmckenna.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**Nicholas George Madiou**
Brennan, McKenna & Lawlor, Chartered
6305 Ivy Lane
Suite 700
Greenbelt, MD 20770
301-474-0044
Fax: 301-474-5730
Email: nickmadiou@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**Pending Counts**

18:922(g)(1) FELON IN POSSESSION
OF A FIREARM AND AMMUNITION
(1s)

**Disposition**

IMPRISONMENT for a term of 20 months
as to count 1, 20 months as to Count 3 to
run concurrently to Count 1, 60 months as
to Count 4 to run consecutively to Counts
1 and 3, for a total term of 80 months;

**JA1**

|  |  |
|---|---|
|  | SUPERVISED RELEASE for a term 3 years as to Count 1, 3 years as to Count 3 and 5 years as to Count 4, with all counts to run concurrently for a total term of 5 years; ASSESSMENT $300.00 |
| 21:841(a)(1),(b)(1)(C) POSSESSION WITH INTENT TO DISTRIBUTE CONTROLLED SUBSTANCES (3s) | IMPRISONMENT for a term of 20 months as to count 1, 20 months as to Count 3 to run concurrently to Count 1, 60 months as to Count 4 to run consecutively to Counts 1 and 3, for a total term of 80 months; SUPERVISED RELEASE for a term 3 years as to Count 1, 3 years as to Count 3 and 5 years as to Count 4, with all counts to run concurrently for a total term of 5 years; ASSESSMENT $300.00 |
| 18:924(c) POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME (4s) | IMPRISONMENT for a term of 20 months as to count 1, 20 months as to Count 3 to run concurrently to Count 1, 60 months as to Count 4 to run consecutively to Counts 1 and 3, for a total term of 80 months; SUPERVISED RELEASE for a term 3 years as to Count 1, 3 years as to Count 3 and 5 years as to Count 4, with all counts to run concurrently for a total term of 5 years; ASSESSMENT $300.00 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:922(g)(1) FELON IN POSSESSION OF A FIREARM AND AMMUNITION (1) | DISMISSED |
| 18:922(g)(1) FELON IN POSSESSION OF A FIREARM AND AMMUNITION (2s) | DISMISSED |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

**JA2**

**USA**                            represented by **Christopher M Sarma**
                                                  United States Attorney's Office
                                                  6406 Ivy Lane 8th Fl
                                                  Suite 800
                                                  Greenbelt, MD 20770
                                                  301-344-4431
                                                  Email: Christopher.Sarma@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: Assistant US Attorney*

                                                  **Kelly OConnell Hayes**
                                                  Office of the United States Attorney
                                                  6406 Ivy Ln Ste 800
                                                  Greenbelt, MD 20770
                                                  13013440041
                                                  Fax: 13013444516
                                                  Email: kelly.hayes@usdoj.gov
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/14/2022 | 1 | SEALED INDICTMENT as to John Arthur Wiggins (1) count(s) 1. (dg3s, Deputy Clerk) (Entered: 12/14/2022) |
| 12/14/2022 | 3 | ORDER on MOTION to Seal as to John Arthur Wiggins.. Signed by Magistrate Judge Timothy J. Sullivan on 12/14/2022. (dg3s, Deputy Clerk) (Entered: 12/14/2022) |
| 12/29/2022 | 5 | Motion and Order to Unseal as to John Arthur Wiggins.. Signed by Magistrate Judge Ajmel Ahsen Quereshi on 12/29/2022. (bas, Deputy Clerk) (Entered: 12/29/2022) |
| 12/30/2022 |  | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to John Arthur Wiggins. PLEASE NOTE: Defendant is in custody. A writ was requested on 12/30/2022. A come up was requested on 12/30/2022. An interpreter will not be needed. Initial Appearance set for 1/20/2023 02:00 PM in Greenbelt (for specific location, refer to court website:www.mdd.uscourts.gov/calendar/calendar.asp) before Magistrate Judge Ajmel Ahsen Quereshi.(Sarma, Christopher) (Entered: 12/30/2022) |
| 12/30/2022 | 8 | NOTICE OF ATTORNEY APPEARANCE Kelly OConnell Hayes appearing for USA. (Hayes, Kelly) (Entered: 12/30/2022) |
| 01/17/2023 | 9 | NOTICE OF ATTORNEY APPEARANCE: John Michael McKenna as Retained Counsel appearing for John Arthur Wiggins(McKenna, John) (Entered: 01/17/2023) |
| 01/18/2023 | 10 | MOTION Pre-Trial Detention by USA as to John Arthur Wiggins. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Sarma, Christopher) (Entered: 01/18/2023) |
| 01/20/2023 | 11 | Arrest Warrant Returned Executed on 1/20/2023 in case as to John Arthur Wiggins(bas, Deputy Clerk) (Entered: 01/20/2023) |

**JA3**

| 01/20/2023 | 12 | Initial Appearance (Defendant informed of Rights) and Arraignment Hearing held on 1/20/2023, Plea entered of NOT GUILTY as to count 1 of the Indictment before Magistrate Judge Ajmel Ahsen Quereshi.(FTR- Johnson 2A) (jj2s, Deputy Clerk) (Entered: 01/20/2023) |
|---|---|---|
| 01/20/2023 | 13 | ORDER pursuant to Fed R Crim P 5(f) and the Due Process Protections Act as to John Arthur Wiggins Signed by Magistrate Judge Ajmel Ahsen Quereshi on 1/20/2023. (jj2s, Deputy Clerk) (Entered: 01/20/2023) |
| 01/20/2023 | 14 | ORDER OF DETENTION BY AGREEMENT as to John Arthur Wiggins Signed by Magistrate Judge Ajmel Ahsen Quereshi on 1/20/2023. (Copy emailed to USMS on 1/20/2023) (jj2s, Deputy Clerk) (Entered: 01/20/2023) |
| 01/20/2023 | 15 | Consent MOTION for Speedy Trial *Exclusion* by USA as to John Arthur Wiggins. (Attachments: # 1 Text of Proposed Order)(Sarma, Christopher) (Entered: 01/20/2023) |
| 02/08/2023 | 16 | ORDER Granting 15 Consent Motion to Exclude Time Pursuant to the Speedy TrialAct as to John Arthur Wiggins (1). Signed by Judge Paula Xinis on 2/8/2023. (bas, Deputy Clerk) (Entered: 02/08/2023) |
| 02/13/2023 | | Telephone Conference as to John Arthur Wiggins held on 2/13/2023 before Judge Paula Xinis. (5 min) (tb2s, Chambers) (Entered: 02/13/2023) |
| 02/13/2023 | 17 | PAPERLESS NOTICE: A follow up status call has been scheduled for April 17, 2023 at 9:00 a.m. Government should initiate call to Chambers, (301) 344-0653. Thank you. (tb2s, Chambers) (Entered: 02/13/2023) |
| 02/13/2023 | 18 | Consent MOTION for Speedy Trial *Exclusion* by USA as to John Arthur Wiggins. (Attachments: # 1 Text of Proposed Order)(Sarma, Christopher) (Entered: 02/13/2023) |
| 03/08/2023 | 19 | SUPERSEDING INDICTMENT as to John Arthur Wiggins (1) count(s) 1s-2s, 3s, 4s. (bas, Deputy Clerk) (Entered: 03/09/2023) |
| 04/17/2023 | 22 | PAPERLESS ORDER GRANTING 18 Motion to Exclude Time. The period between February 13, 2023 through and including April 17, 2023 is excluded, in computing the time within which trial must commence, in accordance with 18 U.S.C. § 3161(c). Signed by Judge Paula Xinis on 4/17/2023. (tb2s, Chambers) (Entered: 04/17/2023) |
| 04/17/2023 | 23 | NOTICE OF ATTORNEY APPEARANCE: Nicholas G Madiou as Retained Counsel appearing for John Arthur Wiggins(Madiou, Nicholas) (Entered: 04/17/2023) |
| 04/17/2023 | | Telephone Conference as to John Arthur Wiggins held on 4/17/2023 before Judge Paula Xinis. (7 min) (tb2s, Chambers) (Entered: 04/17/2023) |
| 04/17/2023 | 24 | PAPERLESS NOTICE: A follow up status call has been scheduled for May 31, 2023 at 3:00 p.m. Government should initiate call to Chambers, (301) 344-0653.(tb2s, Chambers) (Entered: 04/17/2023) |
| 04/17/2023 | 25 | Consent MOTION for Speedy Trial *Exclusion* by USA as to John Arthur Wiggins. (Attachments: # 1 Text of Proposed Order)(Sarma, Christopher) (Entered: 04/17/2023) |
| 04/18/2023 | 26 | ORDER Granting 25 Consent Motion to Exclude Time Pursuant to the Speedy Trial Actas to John Arthur Wiggins (1). Signed by Judge Paula Xinis on 4/18/2023. (bas, Deputy Clerk) (Entered: 04/18/2023) |

| | | |
|---|---|---|
| 05/17/2023 | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to John Arthur Wiggins. PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 5/17/2023. An interpreter will not be needed. Rearraignment set for 5/31/2023 03:00 PM in Greenbelt (for specific location, refer to court website:www.mdd.uscourts.gov/calendar/calendar.asp) before Judge Paula Xinis. (Sarma, Christopher) (Entered: 05/17/2023) |
| 05/31/2023 | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to John Arthur Wiggins. PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 5/31/2023. An interpreter will not be needed. Sentencing set for 9/7/2023 11:30 AM in Greenbelt (for specific location, refer to court website:www.mdd.uscourts.gov/calendar/calendar.asp) before Judge Paula Xinis. (Hayes, Kelly) (Entered: 05/31/2023) |
| 05/31/2023 | 27 | Initial Appearance and Arraignment as to John Arthur Wiggins (1), Plea entered Guilty as to Counts 1, 3, and 4 of the Superseding Indictment and Not Guilty as to Count 2 of the Superseding Indictment before Judge Paula Xinis.(Court Reporter: Kathy Cortopassi - 2C) (bus, Deputy Clerk) (Entered: 05/31/2023) |
| 05/31/2023 | 28 | PLEA AGREEMENT as to John Arthur Wiggins (Attachments: # 1 Attachment A)(bus, Deputy Clerk) (Entered: 05/31/2023) |
| 05/31/2023 | 29 | -SEALED- PLEA SUPPLEMENT as to John Arthur Wiggins (bus, Deputy Clerk) (Entered: 05/31/2023) |
| 05/31/2023 | 30 | Regular Sentencing Order as to John Arthur Wiggins. Signed by Judge Paula Xinis on 5/31/2023. (bus, Deputy Clerk) (Entered: 05/31/2023) |
| 07/21/2023 | 31 | MOTION Emergency Motion for Detention Hearing by John Arthur Wiggins. (Attachments: # 1 Text of Proposed Order)(McKenna, John) (Entered: 07/21/2023) |
| 07/21/2023 | 32 | PAPERLESS ORDER: The government is DIRECTED to file their Response to 31 MOTION Emergency Motion for Detention Hearing by noon, July 24, 2023. A Detention Hearing has been scheduled for July 25, 2023 at 1:00 p.m. Signed by Judge Paula Xinis on 7/21/2023. (tb2s, Chambers) (Entered: 07/21/2023) |
| 07/21/2023 | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to John Arthur Wiggins. PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 7/21/2023. An interpreter will not be needed. Detention Hearing set for 7/25/2023 01:00 PM in Greenbelt (for specific location, refer to court website:www.mdd.uscourts.gov/calendar/calendar.asp) before Judge Paula Xinis. (Sarma, Christopher) (Entered: 07/21/2023) |
| 07/23/2023 | 33 | RESPONSE in Opposition by USA as to John Arthur Wiggins re 31 MOTION Emergency Motion for Detention Hearing (Attachments: # 1 Exhibit A)(Sarma, Christopher) (Entered: 07/23/2023) |
| 07/24/2023 | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to John Arthur Wiggins. PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 7/24/2023. An interpreter will not be needed. Sentencing set for 9/7/2023 11:30 AM in Greenbelt (for specific location, refer to court website:www.mdd.uscourts.gov/calendar/calendar.asp) before Judge Paula Xinis. (Sarma, Christopher) (Entered: 07/24/2023) |

**JA5**

| 07/24/2023 | 35 | RESPONSE re 33 Response in Opposition. *Defendant's Reply to Government's Opposition to Emergency Motion for Detention Hearing* (McKenna, John) (Entered: 07/24/2023) |
| 07/25/2023 | 36 | Motion Hearing held on 7/25/2023 re 31 Emergency Motion for a Detention Hearing before Judge Paula Xinis.(Court Reporter: Kathy Cortopassi - 2C) (bus, Deputy Clerk) (Entered: 07/25/2023) |
| 07/25/2023 | 37 | ORAL ORDER denying 31 Emergency Motion for a Detention Hearing for the reasons stated on the record in open court. Signed by Judge Paula Xinis on 7/25/2023. (bus, Deputy Clerk) (Entered: 07/25/2023) |
| 08/22/2023 | 38 | MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture* by USA as to John Arthur Wiggins. (Attachments: # 1 Text of Proposed Order for Preliminary Order of Forfeiture)(Hayes, Kelly) (Entered: 08/22/2023) |
| 08/24/2023 | 39 | SENTENCING MEMORANDUM by USA as to John Arthur Wiggins (Sarma, Christopher) (Entered: 08/24/2023) |
| 08/24/2023 | 40 | -SEALED- MOTION to Seal by John Arthur Wiggins. (Attachments: # 1 Text of Proposed Order)(McKenna, John) (Entered: 08/24/2023) |
| 08/24/2023 | 41 | **SEALED DOCUMENT** (Attachments: # 1 Exhibit Exhibit A)(McKenna, John) Modified on 8/25/2023 (hmls, Deputy Clerk). (Entered: 08/24/2023) |
| 08/25/2023 | 42 | PAPERLESS ORDER GRANTING 40 Motion to Seal 41 Proposed Sealed Document as to John Arthur Wiggins (1). Signed by Judge Paula Xinis on 8/25/2023. (hmls, Deputy Clerk) (Entered: 08/25/2023) |
| 09/07/2023 | 43 | Sentencing as to John Arthur Wiggins held on 9/7/2023 before Judge Paula Xinis.(Court Reporter: Kathy Cortopassi - 2C) (bus, Deputy Clerk) (Entered: 09/07/2023) |
| 09/07/2023 | 44 | Preliminary Order of Forfeiture as to John Arthur Wiggins (1). Signed by Judge Paula Xinis on 9/7/2023. (bus, Deputy Clerk) (Entered: 09/07/2023) |
| 09/08/2023 | 45 | JUDGMENT as to John Arthur Wiggins (1), Count(s) 1, 2s, DISMISSED; Count(s) 1s, 3s, 4s, IMPRISONMENT for a term of 20 months as to count 1, 20 months as to Count 3 to run concurrently to Count 1, 60 months as to Count 4 to run consecutively to Counts 1 and 3, for a total term of 80 months; SUPERVISED RELEASE for a term 3 years as to Count 1, 3 years as to Count 3 and 5 years as to Count 4, with all counts to run concurrently for a total term of 5 years; ASSESSMENT $300.00. Signed by Judge Paula Xinis on 9/7/2023. (bas, Deputy Clerk) (Entered: 09/08/2023) |
| 09/21/2023 | 47 | NOTICE OF APPEAL by John Arthur Wiggins Fee Status: Not paid (McKenna, John) Modified on 9/25/2023 (kos, Deputy Clerk). (Entered: 09/21/2023) |
| 09/25/2023 | 48 | Transmission of Notice of Appeal and Docket Sheet as to John Arthur Wiggins to US Court of Appeals re 47 Notice of Appeal - Final Judgment (kos, Deputy Clerk) (Entered: 09/25/2023) |
| 09/28/2023 | 49 | USCA Case Number 23-4606 as to John Arthur Wiggins for 47 Notice of Appeal - Final Judgment filed by John Arthur Wiggins. Case Manager - Anisha Walker. (kos, Deputy Clerk) (Entered: 09/28/2023) |

**JA6**

| | | |
|---|---|---|
| 11/01/2023 | 50 | ORDER of USCA appointing Mirriam Z. Seddiq as counsel on appeal as to John Arthur Wiggins re 47 Notice of Appeal - Final Judgment (av4s, Deputy Clerk) (Entered: 11/02/2023) |
| 11/14/2023 | 51 | TRANSCRIPT ORDER ACKNOWLEDGMENT by John Arthur Wiggins for proceedings held on Plea Hearing- 05/31/2023; Sentencing- 09/07/2023 before Judge Paula Xinis, re 47 Notice of Appeal - Final Judgment - Transcript due by 12/21/2023. (Court Reporter; Kathleen Cortopassi) (slss, Deputy Clerk) (Entered: 11/14/2023) |
| 11/27/2023 | 52 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to John Arthur Wiggins for dates of 5/31/23 before Judge Paula Xinis, re 47 Notice of Appeal - Final Judgment Court Reporter/Transcriber Kathy Cortopassi, Telephone number 301-344-3499. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Does this satisfy all appellate orders for this reporter? - N. Redaction Request due 12/18/2023. Redacted Transcript Deadline set for 12/28/2023. Release of Transcript Restriction set for 2/26/2024. (kc3, Court Reporter) (Entered: 11/27/2023) |
| 11/27/2023 | 53 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to John Arthur Wiggins for dates of 9/7/23 before Judge Xinis, re 47 Notice of Appeal - Final Judgment Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Does this satisfy all appellate orders for this reporter? - Y. Redaction Request due 12/18/2023. Redacted Transcript Deadline set for 12/28/2023. Release of Transcript Restriction set for 2/26/2024. (kc3, Court Reporter) (Entered: 11/27/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/04/2024 08:31:44 | | |
| **PACER Login:** | Lantagne92 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:22-cr-00430-PX |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

JDM 12.9.22

CMS/KOH: USAO 2022R00659



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| **v.** | *    **CRIMINAL NO.** 22-cr-00430 PX |
| | * |
| **JOHN ARTHUR WIGGINS,** | *    **(Felon in Possession of a Firearm and** |
| | *    **Ammunition, 18 U.S.C. § 922(g)(1);** |
| **Defendant** | *    **Forfeiture, 18 U.S.C. § 924(d),** |
| | *    **21 U.S.C. § 853(p), 28 U.S.C. § 2461(c))** |
| | * |

\*\*\*\*\*\*\*

## INDICTMENT

### COUNT ONE
#### (Felon in Possession of a Firearm and Ammunition)

The Grand Jury for the District of Maryland charges that:

On or about September 10, 2022, in the District of Maryland, the defendant,

### JOHN ARTHUR WIGGINS,

knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm and ammunition—that is, an FNH .40 caliber pistol and approximately 10 rounds of .40 caliber ammunition—and the firearm and ammunition were in and affecting commerce.

18 U.S.C. § 922(g)(1)

**JA8**

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.       Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 924(d), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction under Count One of this Indictment.

### Firearms and Ammunition Forfeiture

2.       Upon conviction of the offense set forth in Count One, the defendant,

**JOHN ARTHUR WIGGINS,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in the offense, including, but not limited to:

        a.       an FNH .40 caliber pistol bearing the serial number FX2U032159; and

        b.       approximately 10 rounds of .40 caliber ammunition

### Substitute Assets

3.       If, as a result of any act or omission of the defendant, any such property subject to forfeiture:

        a.       cannot be located upon the exercise of due diligence;

        b.       has been transferred or sold to, or deposited with, a third person;

        c.       has been placed beyond the jurisdiction of the Court;

        d.       has been substantially diminished in value; or

        e.       has been commingled with other property which cannot be subdivided without difficulty,

**JA9**

the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), shall

be entitled to forfeiture of substitute property up to the value of the forfeitable property.

18 U.S.C. § 924(d)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Erek L. Barron
United States Attorney

A TRUE BILL:      /

**SIGNATURE REDACTED**

Foreperson

Date: December 14, 2022

3

**JA10**

CMS/KOH: USAO 2022R00659

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. PX-22-430** |
| | * | |
| **JOHN ARTHUR WIGGINS,** | * | **(Felon in Possession of Firearm and** |
| | * | **Ammunition, 18 U.S.C. § 922(g)(1);** |
| **Defendant** | * | **Possession with Intent to Distribute** |
| | * | **Controlled Substances, 21 U.S.C.** |
| | * | **§ 841(a)(1); Possession of a Firearm in** |
| | * | **Furtherance of a Drug Trafficking** |
| | * | **Crime, 18 U.S.C. § 924(c); Forfeiture,** |
| | * | **18 U.S.C. § 924(d), 21 U.S.C. § 853,** |
| | * | **28 U.S.C. § 2461(c))** |
| | * | |

*******

### SUPERSEDING INDICTMENT

### COUNT ONE
### (Felon in Possession of a Firearm and Ammunition)

USDC- GREENBELT
'23 MAR 8 PM 4:00

The Grand Jury for the District of Maryland charges that:

On or about September 10, 2022, in the District of Maryland, the defendant,

### JOHN ARTHUR WIGGINS,

knowing he had previously been convicted of a crime punishable by imprisonment for a term

exceeding one year, knowingly possessed a firearm and ammunition—that is, an FNH .40 caliber

pistol and approximately 10 rounds of .40 caliber ammunition—and the firearm and ammunition

were in and affecting commerce.

18 U.S.C. § 922(g)(1)

**JA11**

## COUNT TWO
### (Felon in Possession of a Firearm and Ammunition)

The Grand Jury for the District of Maryland further charges that:

On or about December 13, 2022, in the District of Maryland, the defendant,

**JOHN ARTHUR WIGGINS,**

knowing he had previously been convicted of a crime punishable by imprisonment for a term

exceeding one year, knowingly possessed a firearm and ammunition—that is, a Smith and

Wesson Model M&P 22 Compact .22 caliber pistol and approximately 10 rounds of .22 caliber

ammunition—and the firearm and ammunition were in and affecting commerce.

18 U.S.C. § 922(g)(1)

2

**JA12**

### COUNT THREE
**(Possession with Intent to Distribute Controlled Substances)**

The Grand Jury for the District of Maryland further charges that:

On or about December 13, 2022, in the District of Maryland, the defendant,

**JOHN ARTHUR WIGGINS,**

knowingly possessed with the intent to distribute (i) a mixture and substance containing a

detectable amount of cocaine base, a Schedule II controlled substance, and (ii) a mixture and

substance containing a detectable amount of cocaine, a Schedule II controlled substance.


21 U.S.C. §§ 841(a)(1), (b)(1)(C)

**JA13**

## COUNT FOUR
### (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

The Grand Jury for the District of Maryland further charges that:

On or about December 13, 2022, in the District of Maryland, the defendant,

### JOHN ARTHUR WIGGINS,

knowingly possessed a firearm—that is, a Smith and Wesson Model M&P 22 Compact .22

caliber pistol—in furtherance of a drug trafficking crime for which he may be prosecuted in a

court of the United States, that is, possession with intent to distribute controlled substances, in

violation of 21 U.S.C. § 841, as charged in Count Three of this Superseding Indictment and

incorporated here.


18 U.S.C. § 924(c)

4

**JA14**

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.     Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the

United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 924(d),

21 U.S.C. § 853, and 28 U.S.C. § 2461(c), in the event of the defendant's conviction under

Counts One through Four of this Superseding Indictment.

### Firearms and Ammunition Forfeiture

2.     Upon conviction of the offense set forth in Counts One, Two, and Four of this

Superseding Indictment, the defendant,

### JOHN ARTHUR WIGGINS,

shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any

firearms and ammunition involved in the offenses.

### Narcotics Forfeiture

3.     Upon conviction of the offense set forth in Count Three of this Superseding

Indictment, the defendant,

### JOHN ARTHUR WIGGINS,

shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a): (a) any property constituting,

or derived from, any proceeds obtained, directly or indirectly, as the result of such offense; and

(b) any property used or intended to be used, in any manner or part, to commit, or to facilitate the

commission of, such offense.

### Property Subject to Forfeiture

4.     The property subject to forfeiture includes, but is not limited to, the following:

a.     an FNH .40 caliber pistol bearing the serial number FX2U032159;

5

**JA15**

b.  approximately 10 rounds of .40 caliber ammunition contained in the FNH pistol;

c.  a Smith and Wesson Model M&P 22 Compact .22 caliber pistol bearing serial number HHE3071; and

d.  approximately 10 rounds of .22 caliber ammunition contained in the Smith and Wesson pistol.

**Substitute Assets**

5.  If, as a result of any act or omission of the defendant, any such property subject to forfeiture:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty,

the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), shall be entitled to forfeiture of substitute property up to the value of the forfeitable property.

18 U.S.C. § 924(d)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

ELB/CMS
_____
Erek L. Barron
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: March 8, 2023

6

**JA16**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

```
_____
                                )
UNITED STATES OF AMERICA,        )
                                 )
        Plaintiff,               )
                                 )Docket Number
            vs.                  )8:22-cr-430
                                 )
JOHN ARTHUR WIGGINS,             )
                                 )
        Defendant.               )
_____)
```

TRANSCRIPT OF ARRAIGNMENT/PLEA/RULE 11 HEARING
BEFORE THE HONORABLE PAULA XINIS
UNITED STATES DISTRICT COURT JUDGE
WEDNESDAY, MAY 31, 2023, AT 3 P.M.

APPEARANCES:

On Behalf of the Plaintiff:

       CHRISTOPHER M. SARMA, ESQ.
       KELLY O'CONNELL HAYES, ESQ.
       U.S. Attorneys' Office
       6406 Ivy Lane 8th Floor, Suite 800
       Greenbelt, MD 20770
       301-344-4431
       Christopher.Sarma@usdoj.gov

On Behalf of the Defendant:

       JOHN MICHAEL MCKENNA, ESQ
       BRENNAN MCKENNA & LAWLOR, CHTD.
       6305 Ivy Lane, Suite 700
       Greenbelt, MD 20770
       301-474-0044
       jmckenna@brennanmckenna.com

KATHY CORTOPASSI, RDR, CRR, CRC
Official Court Reporter
United States District Court
Greenbelt, Maryland

***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

2

1          THE COURT:  Good afternoon, everyone.  You-all can
2   have a seat.  Will the Government call the case.
3          MR. SARMA:  Case is United States versus
4   John Arthur Wiggins at PX-22-430.
5          Christopher Sarma for the United States.  I'm
6   joined at counsel's table by Kelly Hayes.  We're here today
7   for an arraignment on the superseding indictment, as well as
8   a Rule 11 hearing.
9          THE COURT:  Okay.
10          MR. McKENNA:  Good afternoon, Your Honor.
11   John McKenna on behalf of Mr. Wiggins, who is seated beside
12   me.
13          THE COURT:  Okay.  Good afternoon.  So it's my
14   understanding Mr. Wiggins has not been arraigned on the
15   superseding indictment?  Is that correct?  All right.
16          I don't have a copy of the superseding indictment.
17   So someone needs to get me one if you want an arraignment and
18   a rearraignment.
19          MR. McKENNA:  If I may approach.
20          THE COURT:  Sure.  Thank you, Mr. McKenna.
21          All right.  Mr. Wiggins, today is what I've been
22   told is the day in which you wish to enter a plea to the
23   superseding indictment, but specifically that you wish to
24   plead guilty to Counts 1, 3, and 4 of the superseding
25   indictment, and not guilty as to Count 2.

**JA18**

3

```
 1              Is that your understanding of why you're here?
 2              DEFENDANT:  Yes, ma'am, Your Honor.
 3              THE COURT:  Okay.  So, first, because you haven't
 4    been arraigned on the superseding indictment, let me ask you
 5    a couple questions about that.
 6              Have you read the superseding indictment?
 7              DEFENDANT:  Yes, ma'am, Your Honor.
 8              THE COURT:  Reviewed it with your counsel?
 9              DEFENDANT:  Yes, ma'am.
10              THE COURT:  Do you understand the charges that have
11    been placed against you?
12              DEFENDANT:  Yes, ma'am.
13              THE COURT:  Okay.  And, Mr. McKenna, can you
14    confirm that you've reviewed the charges with Mr. Wiggins?
15              MR. McKENNA:  Yes, Your Honor.
16              THE COURT:  Okay.  And so, Mr. Wiggins, just like
17    you have already been arraigned on the original indictment,
18    the same rules of the road apply here.  You have the right to
19    a trial.  You have the right to counsel.  You have the right
20    to be considered for bail.
21              And I am going to have Mr. Ulander in a moment
22    actually take your plea as to each count, so both the guilty
23    plea and the not guilty plea.
24              But I want to make sure that you understand the
25    rights that you have walking into this courtroom being
```

4

 1   indicted on the superseding indictment.

 2           Do you understand those?

 3           DEFENDANT:  Yes, ma'am.

 4           THE COURT:  Counsel, what I suggest is that I move

 5   right into the taking of the plea from Mr. Ulander.  Correct?

 6           MR. McKENNA:  I agree.

 7           THE COURT:  So in a moment, Mr. Wiggins,

 8   Mr. Ulander is going to place you under oath to take your

 9   plea.  And I'll just remind you at that point you're under

10   oath, which means any answers you give me must be the truth,

11   or you could be subject to separate prosecution for something

12   called perjury.

13           Then I will have a number of questions for you to

14   make sure that when you do, especially plead guilty to those

15   three counts, you do so knowingly and voluntarily; that you

16   really wish to give up all these important rights that we're

17   going to talk about in a moment.  Okay?

18           DEFENDANT:  Yes, ma'am.

19           THE COURT:  All right.  So Mr. Ulander.

20           (Oath administered to Defendant Wiggins.)

21           DEFENDANT:  Yes.

22           THE CLERK:  You can put your hand down.  Just pull

23   the mic a little closer to you.

24           If you could please state your full name for the

25   record.

5

```
 1          DEFENDANT:  John Arthur Wiggins.
 2          THE CLERK:  What is your age?
 3          DEFENDANT:  54.
 4          THE CLERK:  What year were you born?
 5          DEFENDANT:  1968.
 6          THE CLERK:  Have you been furnished with a copy of
 7   the superseding indictment by the United States Attorney?
 8          DEFENDANT:  Yes, sir.
 9          THE CLERK:  Have you read the superseding
10   indictment?
11          DEFENDANT:  Yes, sir.
12          THE CLERK:  And do you understand the charges which
13   have been listed against you?
14          DEFENDANT:  Yes, sir.
15          THE CLERK:  Mr. McKenna has represented the
16   defendant.  Are you satisfied with the understanding of what
17   he is charged with?
18          MR. McKENNA:  Yes, sir.
19          THE COURT:  Mr. Wiggins, you have been charged in
20   Counts 1 through 4 of the superseding indictment.
21          What is your plea as to Counts 1, 3, and 4?
22          DEFENDANT:  Guilty.
23          THE CLERK:  The plea is guilty as to Counts 1, 3,
24   and 4 of the superseding indictment, and not guilty as to
25   Count 2 of the superseding indictment; is that correct?
```

**JA21**

6

1          DEFENDANT:  Yes, sir.

2          THE COURT:  Thank you.  Okay.

3          Mr. Wiggins, I want to start with some questions

4   about you.  You say you're 54; is that right?

5          DEFENDANT:  Yes, ma'am.

6          THE COURT:  Can you tell me a little bit about your

7   education.

8          DEFENDANT:  I have a GED.  I finished 11th grade.

9          THE COURT:  I'm sorry.  Can you move your

10  microphone.

11          DEFENDANT:  I have a GED and I finished 11th grade

12  in high school.

13          THE COURT:  Okay.  Any problems reading, writing,

14  or understanding English?

15          DEFENDANT:  No, ma'am.

16          THE COURT:  So the indictment in this case, did you

17  have any difficulty reading it and discussing it with your

18  counsel?

19          DEFENDANT:  No, ma'am.

20          THE COURT:  How about the plea agreement?  Any

21  problems reading it and discussing it with your counsel?

22          DEFENDANT:  No, ma'am.

23          THE COURT:  Are you suffering from any mental or

24  physical illness that affects your judgment?  And what I mean

25  by judgment is your ability to understand what's going on

1   around you and make decisions for yourself?

2           DEFENDANT:  No, ma'am.

3           THE COURT:  Are you under the influence of any

4   drugs or alcohol today?

5           DEFENDANT:  No, ma'am.

6           THE COURT:  Any difficulty understanding my

7   questions so far?

8           DEFENDANT:  No, ma'am.

9           THE COURT:  If at any point my questions aren't

10  clear, you let me know, and I'll find a better way of asking

11  the question; okay?

12          DEFENDANT:  Yes, ma'am.

13          THE COURT:  All right.  And if at any point you

14  need more time to discuss anything with Mr. McKenna, you let

15  me know, and I'll give you as much time in private as you

16  need; okay?

17          DEFENDANT:  Yes, ma'am.

18          THE COURT:  All right.  So I'm going to talk with

19  you pretty carefully.  I will go over your plea agreement

20  with you.  So, do you have it close by?  Do you have a copy

21  of it?

22          DEFENDANT:  Yes, ma'am.

23          THE COURT:  The first thing I want to talk to you

24  about is this is a special kind of plea agreement called a

25  C plea.  And that's referencing the rule that's in the first

8

1  paragraph of your agreement.

2          What this rule says is that the parties, you and

3  the Government, can recommend a prison term or a range of a

4  prison term that you believe is the proper sentence.  And if

5  I accept, not only your guilty plea but the plea agreement,

6  then I am binding myself to give you the sentence that you

7  and the Government agree I should give; the prison term.

8          In your particular case, you and the Government

9  have agreed that the sufficient, but not greater than

10 necessary, sentence for you is no lower than 72 months, but

11 no higher than 108 months, which means if I accept the

12 agreement, I will give you a prison term somewhere between 72

13 months and 108 months.

14         Do you understand that?

15         DEFENDANT:  Yes, ma'am, Your Honor.

16         THE COURT:  I'm not going to be able to tell you

17 today if I'll accept the agreement.  I will be able to tell

18 you if I accept your guilty plea.

19         But I will wait to get more information about you

20 and the case through what's called a presentence report.  And

21 when we get closer to sentencing, I will let you all know if

22 I have a problem with the plea agreement.  So if you don't

23 hear from me and we get to sentencing, the great likelihood

24 is I will accept the plea agreement and bind myself to give

25 you a sentence within that range.

9

```
 1              Do you understand that?
 2              DEFENDANT:  Yes, ma'am.
 3              THE COURT:  Now, if for some reason I don't accept
 4    the agreement, I'll let both sides know.  And either side
 5    will be free to withdraw from the agreement and go to trial.
 6              So if I don't accept the agreement, you will have
 7    the opportunity to withdraw your guilty plea and go to trial.
 8              Do you understand that?
 9              DEFENDANT:  Yes, ma'am, Your Honor.
10              THE COURT:  Do you have any questions about what
11    we've talked about so far?
12              DEFENDANT:  No, ma'am.
13              THE COURT:  Okay.  All right.
14              So the first place -- the next place I'd like for
15    you to look, actually, in this agreement is the signature
16    page on Page 10.
17              And let me know when you're there.
18              DEFENDANT:  I'm ready.
19              THE COURT:  Okay.  Above your printed name, is that
20    your signature, sir?
21              DEFENDANT:  Yes, ma'am, Your Honor.
22              THE COURT:  And did you sign this document
23    yesterday?
24              DEFENDANT:  Today, Your Honor.
25              THE COURT:  Oh, it's today?  Okay.  So it says the
```

10

1   30th, but --

2           DEFENDANT:  Yeah.

3           THE COURT:  -- you did review it and sign it.

4           Now, before you signed it, did you review the

5   entire agreement with your counsel?

6           DEFENDANT:  Yes, ma'am.

7           THE COURT:  So right above your signature, that

8   paragraph says that you have read the agreement, including

9   the sealed supplement carefully, and carefully reviewed every

10  part of it with your attorney, that you understand and

11  voluntarily agree to it; specifically, you've reviewed the

12  factual and advisory guidelines stipulation with your

13  attorney, and you do not wish to change any part of it.

14  Finally, you are completely satisfied with the representation

15  of your attorney.

16          Is everything that I've just read to you true and

17  accurate?

18          DEFENDANT:  Yes, ma'am, Your Honor.

19          THE COURT:  Okay.

20          Now, if you would turn to the signature at the end

21  of the facts.  The facts in Attachment A, it says Stipulation

22  of Facts.  Page 12.

23          Let me know when you're there.

24          DEFENDANT:  I'm here.

25          THE COURT:  Same question above your printed name.

1 Is that your signature?

2      DEFENDANT:  Yes, ma'am, Your Honor.

3      THE COURT:  And before signing here, did you

4 review -- read all the facts at Attachment A?

5      DEFENDANT:  Yes, ma'am, Your Honor.

6      THE COURT:  And do you agree these facts are true,

7 accurate, and could be proven at trial with evidence beyond a

8 reasonable doubt?

9      DEFENDANT:  Yes, ma'am.

10      THE COURT:  Okay.  In a little bit I'm going to ask

11 the Government to actually read the facts into the record to

12 make sure we're all on the page, but for now if you would

13 turn to the front of the agreement, I'm going go through it

14 with you pretty carefully.

15      The first thing I want to discuss with you on the

16 first page of the agreement is the nature of the three

17 offenses that you're pleading guilty to.  I want to make sure

18 you understand what you're pleading guilty to.

19      So I'm going to go -- for each count, I'm going to

20 go through what are called the elements of the offense.  And

21 the elements are the things that the Government has to prove

22 with evidence beyond a reasonable doubt if you chose to go to

23 trial.

24      Do you understand what I mean when I say elements

25 of an offense?

12

1           DEFENDANT:  Yes, ma'am.

2           THE COURT:  Okay.  So with respect to Count 1,

3    which is possession of a firearm and ammunition after having

4    sustained a felony conviction, the elements are, first, that

5    you knowingly possessed a firearm and ammunition.

6           Second, at the time of the charged act, you had

7    previously been convicted in a court of a crime punishable by

8    imprisonment for a term exceeding one year and your civil

9    rights had not been restored.

10          Third, at the time of the charged act, meaning the

11   possession, you knew that you had previously been convicted

12   of such an offense.

13          And, four, the possession charged was in or

14   affecting interstate or foreign commerce.

15          Do you understand the elements associated with

16   Count 1?

17          DEFENDANT:  Yes, ma'am, Your Honor.

18          THE COURT:  Any questions about that?

19          DEFENDANT:  No, ma'am.

20          THE COURT:  Count 3, possession with intent to

21   distribute controlled substances.

22          The elements are, first, that you possessed the

23   controlled substances alleged in the superseding indictment.

24          Two, that you knew that you possessed the

25   controlled substances.

13

1          And, third, you possessed the controlled substances
2   with the intent to distribute them.
3          Do you understand the elements associated with
4   Count 3?
5          DEFENDANT:  Yes, ma'am, Your Honor.
6          THE COURT:  Any questions about that?
7          DEFENDANT:  No, ma'am.
8          THE COURT:  Count 4.  Possession of a firearm in
9   furtherance of a drug trafficking crime.
10         The elements are, first, that you committed a drug
11  trafficking crime, prosecutable in a court of the United
12  States as alleged in the superseding indictment.
13         And, second, you knowingly possessed a firearm in
14  furtherance of the drug trafficking crime.
15         And I presume that the underlying drug trafficking
16  crime is Count 3; is that correct?
17         DEFENDANT:  That's correct, Your Honor.
18         THE COURT:  Do you understand the elements
19  associated with Count 4?
20         DEFENDANT:  Yes, ma'am.
21         THE COURT:  Any questions about that?
22         DEFENDANT:  No, ma'am, Your Honor.
23         THE COURT:  All right.
24         Next thing I want to go over with you are the
25  mandatory minimum and maximums associated with these counts.

**JA29**

14

1        Generally, maximums are not necessarily what you

2   will face at sentencing or receive at sentencing, but what

3   anyone convicted of these offenses could receive.  It's the

4   absolute top of what a judge like me could impose.

5        Minimums are the required sentence that I must give

6   at a minimum according to Congress.

7        Do you understand what I mean when I say maximums

8   and minimums?

9        DEFENDANT:  Yes, ma'am, Your Honor.

10        THE COURT:  Okay.

11        So for Count 1, which is the possession of a

12   firearm count, the maximum term of imprisonment is 15 years,

13   followed by a term of supervised release of three years.  And

14   supervised release is like probation, except it follows

15   prison.  A maximum fine of $250,000, and a $100 special

16   assessment.  That special assessment is a court cost.  It's

17   mandatory.  And it's due between now and the time of

18   sentencing.

19        Do you understand the maximums associated with

20   Count 1?

21        DEFENDANT:  Yes, ma'am, Your Honor.

22        THE COURT:  Okay.  As to Count 3, the maximum is 20

23   years' imprisonment, followed by at least three years of

24   supervised release, but no more than lifetime supervised

25   release, a million dollar fine, and a $100 special

**JA30**

15

1  assessment.

2          Do you understand the maximums associated with

3  Count 3?

4          DEFENDANT:  Yes, ma'am, Your Honor.

5          THE COURT:  Okay.

6          Now, as to Count 4, this is the possession of a

7  firearm in furtherance of the drug trafficking crime.  There

8  is a mandatory five-year consecutive sentence.

9          So I must give 60 months consecutive to whatever I

10  give on the underlying offenses, up to -- there's a statutory

11  term of life.  There is a maximum supervised release term of

12  five years, a maximum fine of $250,000, and a $100 special

13  assessment.

14          Do you understand the minimums and maximums

15  associated with Count 4?

16          DEFENDANT:  Yes, ma'am, Your Honor.

17          THE COURT:  And just so the record is clear, the

18  agreed-upon C plea range contemplates all three counts, which

19  means if I accept the range, I will be giving an underlying

20  prison term plus 60 years (sic), that when you add them

21  together is going to be somewhere between 72 and 108 months.

22          DEFENDANT:  Did she say 60 years?

23          THE COURT:  Am I right about that?

24          DEFENDANT:  She said 60 years.

25          MR. McKENNA:  Yes, Your Honor.  Just one

**JA31**

16

1  clarification.  I think you said 60 years.

2          THE COURT:  I meant months.  No wonder why you

3  turned to your counsel wondering what is your judge talking

4  about?  I was worried that I was doing the math wrong.

5  Clearly I was.  Okay.

6          Let me try again, all right, Mr. Wiggins.  And not

7  to give you a heart attack.

8          If I accept the agreement, I will give you whatever

9  I give you on the underlying offense plus 60 months

10 consecutive for a total of somewhere between 72 months on the

11 lowest end and 108 months on the highest end.

12         Do you understand that?

13         DEFENDANT:  Yes, ma'am, Your Honor.

14         THE COURT:  Okay.  And, Counsel, I have that right;

15 correct?

16         MR. McKENNA:  Yes, Your Honor.

17         THE COURT:  Very good.  All right.  Any questions

18 before we move on?

19         DEFENDANT:  No, ma'am, Your Honor.

20         THE COURT:  I just want to make sure, as well, that

21 you understand how supervised release works.

22         As I mentioned, it's like probation except it

23 follows prison.  And just like probation, though, you will

24 receive a probation officer and rules and regulations to

25 follow.

17

1          If you violate any of those rules and regulations

2     and the Government can prove it, I might revoke your

3     supervised release and give you more prison and then more

4     supervised release to follow.

5          For today I just want to make sure you understand

6     how supervised release works.  Do you?

7               DEFENDANT:  Yes, ma'am.

8               THE COURT:  Any questions about that?

9               DEFENDANT:  No, ma'am, Your Honor.

10              THE COURT:  Okay.  All right.  There is no

11    restitution in this case, but there is something called

12    forfeiture.  And forfeiture is when the Government can either

13    keep or take property or proceeds that are involved in an

14    offense.

15         And on Page 7 of your agreement, you and the

16    Government agree that the items which are listed at paragraph

17    13, specifically the .40 caliber pistol, the ammunition

18    contained within the pistol, a Smith & Wesson compact caliber

19    pistol, and the ammunition contained within it.

20         So the two guns and the ammunition, you will be

21    giving up all right, title, and interest to it.  Those things

22    will be forfeited to the Government.  And you will not be

23    permitted to complain about that forfeiture order that I will

24    sign to any court at any time.

25              Do you understand that?

18

1          DEFENDANT:  Yes, ma'am.

2          THE COURT:  Any questions about that?

3          DEFENDANT:  No, ma'am.

4          THE COURT:  Counsel, are there any other monetary

5    penalties or property penalties I've missed?

6          MR. SARMA:  No, Your Honor.

7          THE COURT:  Okay.  All right.

8          Mr. Wiggins, the next thing I want to go over with

9    you are the very important constitutional rights that you

10   give up when you plead guilty.  First, I want to make sure

11   you understand them, and next, I want to make sure you really

12   want to give them up.

13         So they start on Page 3, paragraph 4.  The first is

14   that you have the absolute right to plead not guilty and make

15   the Government prove this case with evidence beyond a

16   reasonable doubt at your trial.  And you can have your trial

17   in one of two ways:  Either a jury trial where 12 people are

18   selected from the community to hear your case, or if you and

19   the Government agree, you can have your case tried just

20   before me.  That's called a bench trial.  And I take the

21   place of the jury.

22         If you chose the jury trial, you would participate

23   in selecting your own jury.  We would come to court on the

24   first day of trial.  This room would be full of people from

25   the community.  And I'd ask each person questions that you

19

1  give me as well as the Government.  And those questions are

2  designed to make sure we don't put anybody on the jury who

3  would be unfair, biased, or somehow not qualified to be a

4  fair and impartial juror in your case.

5          And you could ask me to strike, meaning keep off,

6  of your jury anybody who you believe would be unfair, biased,

7  or not qualified.

8          You'd also keep a handful of what's called

9  peremptory strikes.  And those are a certain number of

10 strikes that you can use to keep a certain number people off

11 your jury for whatever reason you and your lawyer decide in

12 private.

13         Once we go through that process and 12 people are

14 selected to be your jury, I tell the jurors before the case

15 even starts about the other very important constitutional

16 rights that you keep when you choose to go to trial.  So I'm

17 going to go through them with you now the way I would with

18 the jury.

19         I tell the jury you are presumed innocent of these

20 charges.  And you carry that presumption of innocence

21 throughout the trial.  That presumption of innocence does not

22 change unless and until the Government can prove the case

23 with evidence beyond a reasonable doubt and convince all 12

24 jurors of your guilt beyond a reasonable doubt.

25         So if, after trial, only some of the jurors

20

1  believed you were guilty and others did not, you couldn't be

2  convicted.  That's called a hung jury.  A mistrial is

3  declared, and then the Government has to decide if they try

4  your case again.

5       I also tell the jury because you are presumed

6  innocent, you have nothing to prove.  The burden of proof

7  always stays with the Government, and it never shifts to you.

8  And it's a very high burden.  It's proof beyond a reasonable

9  doubt.

10      And because you have nothing to prove, I also tell

11 the jury you have the constitutional right to remain silent.

12 You do not have to testify at your trial.  And if you choose

13 not to testify, the jury is told they cannot hold your

14 silence against you.

15      Similarly, because you have nothing to prove, you

16 do not have to put on a defense case.  You don't have to call

17 one witness.  You don't even have to ask any questions of the

18 Government's witnesses.  And if, at the end of trial, the

19 jury believed that the Government had not met its burden,

20 then you couldn't be convicted.

21      Now, of course, if you wish to testify, you'd

22 absolutely be given that opportunity.

23      Similarly, if you wanted to put on a defense case,

24 you would be given the power of a court order, called a

25 subpoena, to make people come to court and testify in your

**JA36**

21

1  case.

2          And just as you have able and competent counsel in

3  Mr. McKenna today, you would have the right to able and

4  competent counsel at your trial who could confront and

5  cross-examine all of the Government's witnesses and challenge

6  the Government's evidence.

7          So far, do you understand all of the trial rights

8  that we've gone over?

9          DEFENDANT:  Yes, ma'am, Your Honor.

10         THE COURT:  Do you have any questions about any of

11 them?

12         DEFENDANT:  No, ma'am.

13         THE COURT:  Now, if I accept your guilty plea today

14 and eventually the plea agreement, we will not have a trial.

15 The next thing we'll do is sentencing.

16         So if I accept the guilty plea and your plea

17 agreement, you will be giving up all your trial rights.

18         Do you understand that?

19         DEFENDANT:  Yes, Ma'am, Your Honor.

20         THE COURT:  And knowing that, do you still wish to

21 plead guilty and go forward?

22         DEFENDANT:  Yes, ma'am, Your Honor.

23         THE COURT:  Okay.

24         The next thing I want to discuss is your appeal

25 rights.  So if you went to trial and you were convicted, you

**JA37**

22

1    would keep the right to appeal anything and everything in
2    your case, from beginning to end, including any decisions I
3    make before trial, what happens at trial, and anything at
4    sentencing.
5            Do you understand that?
6            DEFENDANT:  Yes, ma'am.
7            THE COURT:  But if I accept your guilty plea in the
8    plea agreement, under this agreement you're giving up your
9    right to appeal everything in this case.  You won't be
10   permitted to appeal the conviction or any aspects of my
11   sentence.
12           Do you understand that?
13           DEFENDANT:  Yes, ma'am, Your Honor.
14           THE COURT:  And knowing that, do you still wish to
15   plead guilty and go forward?
16           DEFENDANT:  Yes, ma'am.
17           THE COURT:  Okay.  Any questions so far?
18           DEFENDANT:  No, ma'am.
19           THE COURT:  I want to shift gears to the valuable
20   civil rights that could be affected because you're pleading
21   guilty to felony offenses.
22           Mr. Wiggins, were you born in the United States?
23           DEFENDANT:  Yes, ma'am, Your Honor.
24           THE COURT:  Okay.  So then you don't have to worry
25   about these convictions jeopardizing your ability to stay in

23

1   the United States.

2          But other rights that are affected, as I imagine
3   you already know, is once you have a felony conviction, you
4   cannot possess a firearm or ammunition.  That's its own new
5   felony federal offense.  Other rights that could be affected
6   are your right to receive benefits, vote, hold public office.
7   These are just some of the things that could be affected
8   because these offenses are felony convictions.

9          Do you understand that?

10          DEFENDANT:  Yes, ma'am, Your Honor.

11          THE COURT:  And knowing that there are valuable
12   civil rights that could be jeopardized, do you still wish to
13   plead guilty and go forward?

14          DEFENDANT:  Yes, ma'am.

15          THE COURT:  Okay.  All right.  I want to shift
16   gears and talk about sentencing.

17          So, at the bottom of Page 4 on to Page 5 of your
18   agreement, it discusses the advisory sentencing guidelines.

19          Have you gone over the guidelines with your
20   counsel?

21          DEFENDANT:  Yes, ma'am.

22          THE COURT:  Okay.  So you probably already know
23   that, like the name suggests, the guidelines are advisory,
24   meaning they are important and I must calculate them, but I
25   don't have to give you a guideline sentence.

1    Rather, I've got to follow the law at 18 U.S.C.

2  3553(a), which says I must take the guidelines into account

3  and then all the other evidence in the case and impose a

4  sentence which is sufficient, but not greater than necessary,

5  to achieve all the purposes of sentencing.

6    And those purposes are things like promoting

7  respect for the law, taking into account the seriousness of

8  the offense, protecting the public, avoiding unwarranted

9  disparity, which means I have to keep an eye on sentencing

10  people who do similar things in a similar way.  I have to

11  impose a sentence that will deter you and others who may

12  consider committing crimes like this in the future.

13    And, finally, I have to consider you, your

14  individual history, circumstances, and characteristics.

15    And once I look at all those things and, based on

16  the evidence, I'll impose what I believe is a sufficient, but

17  not greater than necessary, sentence.  And that sentence may

18  be within the guidelines or it might be lower; it might be

19  higher.

20    It -- I know the parties are recommending a

21  particular range.  And as I said today, I won't be able to

22  tell you if it will fit within that range.  But what I am

23  bound, obligated to do under the law, is consider all the

24  evidence and all the factors we've discussed and then arrive

25  at a sufficient, but not greater than necessary, sentence.

25

1      So far, do you understand generally how sentencing
2  works?

3          DEFENDANT:  Yes, ma'am, Your Honor.

4          THE COURT:  Any questions about that?

5          DEFENDANT:  No, ma'am, Your Honor.

6          THE COURT:  So with regard to the guidelines, I
7  want to make sure that you have a working understanding of
8  them, because the next part of your agreement discusses them.

9          So, up on the screen is a page that comes right out
10  of the guideline book.  It's the sentencing chart.  Have you
11  seen this before?

12          DEFENDANT:  Yes, ma'am.

13          THE COURT:  Okay.  So you probably already know
14  that generally the guidelines measure two things:  Going from
15  left to right on that chart where it says "Criminal History,"
16  the guidelines assign points for persons' prior convictions,
17  all depending on when they happened, the length of the
18  sentence.  And I will add up those points, and you will end
19  up in a criminal history category somewhere between 1 and 6.

20          Going from top to bottom, "Offense Level," that's
21  where the guidelines assign points to what happened in this
22  case.  And where the two meet, Criminal History and Offense
23  Level, on that grid give me the advisory guideline range in
24  months.  And from there I then will consider all the other
25  evidence and impose the sufficient, but not greater than

26

1    necessary, sentence.

2         And obviously as we talked about, I'll also take

3    into account that 924(c) five years consecutive.  That's --

4    I'm sure Mr. McKenna has explained how that works in relation

5    to the guidelines.

6         But my question to you right now is:  Do you

7    generally understand how the guidelines work?

8              DEFENDANT:  Yes, ma'am.

9              THE COURT:  Any questions about that?

10             DEFENDANT:  No, ma'am, Your Honor.

11             THE COURT:  Okay.  So on Page 5 of your agreement,

12   you and the Government have come up with certain guideline

13   calculations.  I haven't been a party to this agreement.  I

14   will review it and take it into account.  I can't promise you

15   for sure I'll agree with these calculations.

16             So for today's purposes, I want to make sure you

17   understand this is an agreement that you have with the

18   Government as to what the guideline calculations are.  And I

19   can't tell you today whether I'll agree with it.

20             Do you understand that?

21             DEFENDANT:  Yes, ma'am.

22             THE COURT:  Okay.  So you and the Government are

23   telling me that as to Count 1, the applicable base offense

24   level is a 20, because the offense was committed after you

25   have had one felony conviction for either a crime of violence

**JA42**

27

1  or a controlled substance offense.

2          There's a four-level increase because you used or

3  possessed a firearm or ammunition in connection with that an

4  offense.  And so as to Count 1, you'd be at a 24.

5          As to Count 3, you are at a base offense level of

6  18 because of the quantity of controlled substances involved

7  in the offense.  And that's where you stay, according to you

8  and the Government, for Count 3.

9          And then next, because there's two counts do what's

10 called "group" under the guidelines, you're telling me I

11 should take the highest of those two, which is a 24, and use

12 that as our offense level.

13          Do you understand where we are in the guidelines so

14 far?

15          DEFENDANT:  Yes, ma'am, Your Honor.

16          THE COURT:  Okay.  And then the last paragraph on

17 the bottom of Page 5 says that because you are accepting

18 responsibility and pleading guilty timely, meaning, you're

19 saving the Government from going to trial or preparing for

20 motions, you'll be entitled for up to three levels off for

21 acceptance of responsibility.

22          Do you understand that?

23          DEFENDANT:  Yes, ma'am, Your Honor.

24          THE COURT:  And if you get all three levels, you'd

25 be at an offense level 21.  And then Count 4 will be the 60

28

1  months consecutive as to whatever I impose on Counts 1 and 3.
2  That's on the top of Page 6.
3          Do you understand that?
4          DEFENDANT:  Yes, ma'am.
5          That was -- you said it would be the 60
6  consecutive?  Or the 924(c), which would be the 50?
7          THE COURT:  What's that?  I'm sorry.
8          DEFENDANT:  Oh, the 60, okay.
9          THE COURT:  The five years consecutive.
10          But to go back to the C plea, the C plea is binding
11  me to a total 72 to 108, and the 60 months is part of that.
12  Understood?
13          DEFENDANT:  Yes, ma'am.
14          THE COURT:  Okay.  Any questions so far?
15          DEFENDANT:  No, ma'am.
16          THE COURT:  Now, the acceptance of responsibility,
17  those three points off, under your agreement -- and this is
18  at Page 5, paragraph E, the bottom of that page -- there are
19  a number of things that you can't do if you want the benefit
20  of those acceptance points, so I want to make sure you
21  understand what they are.  If any of these things happen, the
22  Government may ask me not to give you your acceptance points.
23          So, first, if you fail to admit each and every item
24  in the factual stipulation, or deny involvement in the
25  offense, if you give conflicting statements about your

**JA44**

29

1    involvement in the offense, or if you lie to me, Probation or
2    the Government, if you obstruct or attempt to obstruct
3    justice between now and sentencing -- obstruction is really
4    broad.   It's doing anything that gets in the way of your case
5    going forward in an orderly fashion.
6          So just some examples.  If you try to escape from
7    the facility that you're in, if you try to tamper with
8    witnesses, if you lie to the Court in a way that really gums
9    up your case, these are just some of the things that can be
10   obstruction.
11         Do you understand what I mean when I say
12   obstruction of justice?
13         DEFENDANT:  Yes, ma'am, Your Honor.
14         THE COURT:  If you engage in any criminal conduct
15   between today and the day of sentencing, attempt to withdraw
16   your guilty plea from the plea agreement for a reason other
17   than "I don't accept the C plea," these are the things that
18   could result in your not receiving acceptance points.
19         Do you understand how your acceptance of
20   responsibility paragraph is working in your agreement?
21         DEFENDANT:  Yes, ma'am, Your Honor.
22         THE COURT:  Okay.  Any questions about sentencing?
23         DEFENDANT:  No, ma'am, Your Honor.
24         THE COURT:  All right.
25         And as we talked about, I will tell you as we get

**JA45**

30

1   closer to sentencing if I have a problem with the plea

2   agreement.  But no news is good news.

3          If you don't hear from me and you come to

4   sentencing, the great likelihood is I will accept the plea

5   agreement.  Okay?

6          DEFENDANT:  Yes, ma'am.

7          THE COURT:  All right.

8          The next thing I want to discuss with you is at

9   this bottom of Page 8, paragraphs 19 and 20 of your

10  agreement.

11         So, 19 lists the things that the Government expects

12  you will do if you want the benefit of this plea agreement.

13  If you fail to honor those things, if you don't do them, then

14  the Government may ask me to find you broke the plea

15  agreement.

16         If you break the plea agreement, the Government can

17  get out of the plea agreement.  They would be released of all

18  of their obligations under the agreement.  And they are going

19  to be able to ask me for a sentence up to and including the

20  statutory maximums in your case.

21         You, on the other hand, would not be free to get

22  out of your agreement, even if I go higher than the

23  agreed-upon range.

24         So I want to make sure you understand the things

25  you're expected to do if you want the benefit of the

1    agreement; okay?

2              DEFENDANT:  Yes, ma'am.

3              THE COURT:  So it says between now and sentencing,

4    you will not obstruct justice or violate any federal, state,

5    or local law.  You will acknowledge your guilt to the

6    probation officer and to me.  You'll be truthful in any

7    statement you make to me, the Government, law enforcement, or

8    probation.  You'll cooperate in the preparation of the

9    presentence report.  And you will not move to withdraw from

10   your plea of guilty or from this agreement unless, of course,

11   I don't accept the agreement.

12             Do you understand the things you're expected to do

13   if you want the benefit of this plea agreement?

14             DEFENDANT:  Yes, ma'am, Your Honor.

15             THE COURT:  Any questions about anything we've gone

16   over so far?

17             DEFENDANT:  No, ma'am.

18             THE COURT:  Okay.  On Page 9, the last paragraph

19   entitled, "Entire Agreement," basically says that any

20   promises which have been made to you in connection with your

21   guilty plea have been written down in this plea agreement.

22             So my question is:  Has anyone made any other

23   promises to you not written down in this agreement to get you

24   to plead guilty?

25             DEFENDANT:  No, ma'am, Your Honor.

32

1          THE COURT:  Has anyone forced, threatened, or
2   coerced you, or anybody close to you, to get you to plead
3   guilty?
4          DEFENDANT:  No, ma'am, Your Honor.
5          THE COURT:  Are you pleading guilty of your own
6   free and voluntary will because you're guilty of the offenses
7   we've discussed today?
8          DEFENDANT:  Yes, ma'am, Your Honor.
9          THE COURT:  You've been represented by Mr. McKenna
10  in this case.  Has he always had the time necessary to
11  discuss with you your case?
12         DEFENDANT:  Yes, ma'am, Your Honor.
13         THE COURT:  And review with you the evidence that
14  the Government would present at trial if you chose to go to
15  trial?
16         DEFENDANT:  Yes, ma'am, Your Honor.
17         THE COURT:  And discuss this very important
18  decision about pleading guilty instead of going to trial?
19         DEFENDANT:  Yes, ma'am.
20         THE COURT:  Are you satisfied with his
21  representation?
22         DEFENDANT:  Yes, ma'am.
23         THE COURT:  Okay.
24         Mr. McKenna, have all formal written plea offers
25  been communicated to Mr. Wiggins?

**JA48**

1          MR. McKENNA:  Yes, Your Honor.

2          THE COURT:  All right.

3          Mr. Wiggins, we are now going to turn to the

4    Statement of Facts at Attachment A.  Earlier you told me you

5    agreed with these facts.

6          I look to these facts for two reasons.  One,

7    whenever a person pleads guilty, I have to make sure that the

8    crimes the person is pleading guilty to actually happened.

9    So I compare the facts that both sides agree could be proven

10   at trial with the law.

11         The other thing is I look at these facts for

12   sentencing.  They're not the only facts I consider, but I do

13   take them into account.

14         So I want -- if you would listen very carefully to

15   the Government as they read these facts into the record, and

16   then I'm going to have some follow-up questions for you; all

17   right?

18         DEFENDANT:  Yes, ma'am.

19         THE COURT:  Mr. Sarma.

20         MR. SARMA:  The undersigned parties stipulate and

21   agree that if this case had proceeded to trial, this office

22   of the Government would have proven the following facts

23   beyond a reasonable doubt:  The undersigned parties also

24   stipulate and agree that the following facts do not encompass

25   all of the evidence that would have been presented had this

34

1    matter proceeded to trial.

2          September 10, 2022, incident forms the basis for

3    Count 1.  On September 10, 2022, law enforcement responded to

4    a car accident in Brentwood, Maryland.  When law enforcement

5    arrived at the scene, they found Defendant, John Arthur

6    Wiggins, hereinafter Wiggins, asleep in his car with the car

7    still on.  Law enforcement saw an open alcohol container in

8    the car.  Law enforcement conducted a search of the car,

9    including of a black book bag that was within the car.  In

10   the book bag, law enforcement found an FNH .40 caliber

11   handgun, hereinafter known as the FNH firearm, loaded with

12   approximately 10 rounds of .40 caliber ammunition.

13         Wiggins knowingly possessed the loaded FNH firearm.

14   The firearm and ammunition traveled in interstate commerce

15   prior to their recovery in the state of Maryland.

16         Prior to possessing the firearm and ammunition, on

17   September 10, 2022, Wiggins had been convicted and knew that

18   he had been convicted of an offense punishable by more than

19   one year imprisonment, and his civil rights had not been

20   restored and was, therefore, prohibited from possessing a

21   firearm or ammunition.

22         Inside the car, law enforcement also found

23   marijuana, a scale, .754 grams of cocaine contained in one

24   bag, and 4.77 grams of cocaine base distributed across 50

25   bags.  Wiggins knowingly possessed the cocaine and the

35

1    cocaine base with the intent to distribute it.

2        Wiggins possessed a firearm and ammunition in

3    connection with the drug trafficking offense; specifically,

4    the firearm was found in close proximity to the cocaine and

5    cocaine base, and had facilitated or had the potential to

6    facilitate Wiggins' drug trafficking offense.

7        Wiggins was arrested and charged in Prince George's

8    County District Court and released pending trial.

9        December 13, 2022, incident which forms the basis

10   for Counts 3 and 4.  On December 13, 2022, law enforcement

11   conducted a traffic stop on a car that Wiggins was driving,

12   because the car had an unlawful tint and no front license

13   plate.  The traffic stop occurred in Greenbelt, Maryland.

14   Law enforcement saw two open alcohol containers in the car.

15   Law enforcement also smelled marijuana emanating from the

16   car.

17       Upon searching the car, law enforcement found a

18   Smith & Wesson model M&P .22 compact, .22 caliber pistol,

19   hereinafter known as the Smith & Wesson firearm, loaded with

20   approximately 10 rounds of .22 caliber ammunition.  The Smith

21   & Wesson firearm and ammunition traveled in interstate

22   commerce prior to their recovery in the state of Maryland.

23       Prior to possessing the Smith & Wesson firearm and

24   ammunition, on December 13, 2022, Wiggins had been convicted,

25   and knew he had been convicted, of an offense punishable by

36

1  more than one year of imprisonment, and his civil rights had
2  not been restored and was, therefore, prohibited from
3  possessing a firearm or ammunition.
4        In Wiggins' car, law enforcement also found a mason
5  jar of marijuana, 2.782 grams of cocaine in one bag and
6  8.114 grams of cocaine base distributed across 24 bags.
7        Wiggins knowingly possessed the cocaine and cocaine
8  base with the intent to distribute it.  Wiggins knowingly
9  possessed the loaded Smith & Wesson firearm in connection
10  with his drug trafficking offense.
11        Specifically, the firearm was found in close
12  proximity to the cocaine and facilitated, or had the
13  potential to facilitate, Wiggins' drug trafficking offense.
14        In total, applying the guidelines of the drug
15  conversion table, the quantity of narcotics attributable to
16  Wiggins as to both September 22, 2022, and December 13, 2022,
17  incidents was equivalent to at least 40 grams, but less than
18  60 kilograms, of converted drug weight.
19        THE COURT:  Okay.  Thank you.
20        Mr. Wiggins, you've heard the Government read the
21  facts into the record.  Do you agree these facts are true,
22  accurate, and could be proven at trial with evidence beyond a
23  reasonable doubt?
24        DEFENDANT:  Yes, ma'am, Your Honor.
25        THE COURT:  All right.

37

```
 1              Mr. McKenna, any additions, corrections, or changes
 2    to those facts?
 3              MR. McKENNA:  No, Your Honor.
 4              THE COURT:  Okay.
 5              Counsel, what have I neglected to review with
 6    Mr. Wiggins?
 7              Government, anything?
 8              MR. SARMA:  Nothing from the Government, Your
 9    Honor.
10              THE COURT:  Mr. McKenna?
11              MR. McKENNA:  Nothing, thank you.
12              THE COURT:  Mr. Wiggins, before I make my findings,
13    do you need any additional time to talk with your counsel for
14    any reason?
15              DEFENDANT:  No, ma'am.
16              THE COURT:  Do you have any questions of me or your
17    counsel?
18              DEFENDANT:  No, ma'am.
19              THE COURT:  Okay.  All right.
20              Well, you and I have been talking for a good bit,
21    and I had the opportunity not only to hear your answers but
22    observe you.
23              And so it is the finding of this Court that you are
24    fully competent and capable of entering an informed plea;
25    that you're aware of the nature of the charges and the
```

38

1  consequences of your plea, and so your plea of guilty is
2  knowing and voluntary; and it's supported by an independent
3  basis in fact containing each of the essential elements for
4  each of the offenses.
5          So I do find you guilty of Counts 1, 3, and 4 of
6  the superseding indictment.
7          We are going to see each other again at sentencing
8  September 7 at 11:30, and between now and then I'm going to
9  sign a regular sentencing order.
10         So, a presentence report will be prepared.  You,
11 with your lawyer, will be able to be interviewed by the
12 officer who's preparing the report, and I encourage you to
13 fully participate in that process because the presentence
14 report is one of the main ways I get to know you.  It also
15 follows you through the life of your case, so we do want to
16 make sure it's as accurate and complete as possible.
17         Okay.  Anything else, Counsel?
18         MR. SARMA:  Not from the Government, Your Honor.
19         MR. McKENNA:  No, Your Honor.  Thank you.
20         THE COURT:  All right.  Thank you.  I'll see you in
21 September.
22         (Court recessed at 3:57 p.m.)
23
24
25

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CERTIFICATE OF OFFICIAL REPORTER

I, Kathy Cortopassi, RDR, CRR, CRC, Federal Official
Court Reporter, in and for the United States District Court
for the District of Maryland, do hereby certify that pursuant
to Section 753, Title 28, United States Code, that the
foregoing is a true and correct transcript of the
stenographically reported proceedings held in the
above-entitled matter and that the transcript page format is
in conformance with the regulations of the Judicial
Conference of the United States.

Dated this the 26th day of November, 2023.


/s/ Kathy Cortopassi
Kathy Cortopassi, RDR, CRR, CRC
U.S. Official Court Reporter



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

*Christopher M. Sarma* | *Mailing Address:* | *Office Location:* | DIRECT: 301-344-4431
*Assistant United States Attorney* | *6500 Cherrywood Lane, Suite 200* | *6406 Ivy Lane, 8th Floor* | MAIN: 301-344-4433
*Christopher.Sarma@usdoj.gov* | *Greenbelt, MD 20770-1249* | *Greenbelt, MD 20770-1249* | FAX: 301-344-4516

May 26, 2023

John M. McKenna, Esq.
Brennan McKenna & Lawlor
6305 Ivy Lane, Suite 700
Greenbelt, MD 20770

```
_____ FILED          _____ ENTERED
_____ LOGGED   ᴖᴜ    _____ RECEIVED

            MAY 3 1 2023
            AT GREENBELT
     CLERK, U.S. DISTRICT COURT
        DISTRICT OF MARYLAND
BY                        DEPUTY
```

     Re:   <u>United States v. John Arthur Wiggins</u>,
           Criminal No. PX-22-430

Dear Counsel:

       This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, John Arthur Wiggins (hereinafter "the Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. **The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** If this offer has not been accepted by **5:00 p.m. on May 30, 2023**, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offenses of Conviction

       1.    The Defendant agrees to plead guilty to Counts One, Three, and Four of the Superseding Indictment, which charge the Defendant, in Count One, with Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g); in Count Three, with Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1); and, in Count Four, with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offenses

       2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Superseding Indictment, in the District of Maryland—

**JA56**

a.      Count One (Felon in Possession of Firearm and Ammunition): (1) the Defendant knowingly possessed a firearm and ammunition; (2) at the time of the charged act, the Defendant had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, and his civil rights had not been restored; (3) at the time of the charged act, the Defendant knew that he had previously been convicted of such an offense; and (4) the possession charged was in or affecting interstate or foreign commerce.

b.      Count Three (Possession with Intent to Distribute Controlled Substances): (1) the Defendant possessed the controlled substances alleged in the Superseding Indictment; (2) the Defendant knew that he possessed the controlled substances; and (3) the Defendant possessed the controlled substances with the intent to distribute them.

c.      Count Four (Possession of a Firearm in Furtherance of a Drug Trafficking Crime): (1) the Defendant committed a drug trafficking crime prosecutable in a court of the United States, as alleged in the Superseding Indictment; and (2) the Defendant knowingly possessed a firearm in furtherance of the drug trafficking crime.

<u>Penalties</u>

3.      The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 922(g)(1) | N/A | 15 years | 3 years | $250,000 | $100 |
| 3 | 21 U.S.C. § 841(a)(1), (b)(1)(C) | N/A | 20 years | At least 3 years and no more than life | $1,000,000 | $100 |
| 4 | 18 U.S.C. § 924(c) | 5 years (consecutive to any other term of imprisonment imposed) | Life | 5 years | $250,000 | $100 |

a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

2

**JA57**

      c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

    4.    The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

      a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to

3

**JA58**

present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify.  If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case.  Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty.  The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

        5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and

**JA59**

28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that:

<u>Count One (Felon in Possession of a Firearm and Ammunition)</u>

a.      The applicable base offense level is **20**, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), because the defendant committed the instant offense subsequent to sustaining one felony conviction for either a crime of violence or a controlled substance offense.

b.      A **4**-level increase applies, pursuant to U.S.S.G. § 2K2.1(b)(6)(B), because the defendant used or possessed any firearm or ammunition in connection with another felony offense.

<u>Count Three (Possession with Intent to Distribute Controlled Substances)</u>

c.      The applicable base offense level is **18**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(a)(5) and (c)(12), because the quantity of controlled substances involved in the offense, including relevant conduct, was equivalent to at least 40 kilograms but less than 60 kilograms of Converted Drug Weight (after application of the Drug Conversion Tables at U.S.S.G. § 2D1.1, Application Note 8).

<u>Grouping</u>

d.      Counts One and Three group pursuant to U.S.S.G. § 3D1.2(b), (c) and (d).

e.      This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

**JA60**

<u>Count Four (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)</u>

    f. Pursuant to 18 U.S.C. § 924(c)(1)(A)(i) and U.S.S.G § 2K2.4, the mandatory minimum term of imprisonment is five years of imprisonment to be imposed consecutive to the sentence for Counts One and Three.

    7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

    8. No other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Rule 11(c)(1)(C) Plea</u>

    9. The parties stipulate and agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a total term of imprisonment as to Counts One, Three and Four of **not less than 72 months and not more than 108 months in the custody of the Bureau of Prisons,** is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a).

    10. This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

<u>Obligations of the Parties</u>

    11. At the time of sentencing, this Office and the Defendant will recommend that the Court impose a total sentence as to Counts One, Three and Four within the agreed-upon range of not less than 72 months and not more than 108 months in the custody of the Bureau of Prisons. This Office an d the Defendant reserve the right to advocate for a reasonable period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to

6

**JA61**

the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

Forfeiture

12.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

  a.    an FNH .40 caliber pistol bearing the serial number FX2U032159 (Asset ID 22-ATF-044707);

  b.    approximately 10 rounds of .40 caliber ammunition contained in the FNH pistol (Asset ID 22-ATF-044712);

  c.    a Smith and Wesson Model M&P 22 Compact .22 caliber pistol bearing serial number HHE3071 (Asset ID 22-ATF-045790); and

  d.    approximately 10 rounds of .22 caliber ammunition contained in the Smith and Wesson pistol (Asset ID 23-ATF-017396).

14.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15.    The Defendant agrees to assist fully in the forfeiture of the property described above. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will

7

**JA62**

not assist any third party with any challenge or review or any petition for remission of forfeiture.

Waiver of Appeal

17.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

e.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

f.    If the Court imposes a term of imprisonment within the agreed-upon range, the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

g.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Public Benefits in Drug Cases

18.    The Defendant understands and acknowledges that under 21 U.S.C. §§ 862 and 862a, a person who has been convicted of a federal offense involving the distribution or possession of controlled substances may be denied certain federal and state benefits such as loans, grants, or food stamps.

Defendant's Conduct Prior to Sentencing and Breach

19.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement,

8

**JA63**

even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

<u>Entire Agreement</u>

21.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

9

**JA64**

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Kelly O. Hayes
Christopher M. Sarma
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5-30-23
Date

John Arthur Wiggins

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

5/30/23
Date

John M. McKenna, Esq.

10

**JA65**

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

September 10, 2022 Incident (Count One)

On September 10, 2022, law enforcement responded to a car accident in Brentwood, Maryland. When law enforcement arrived at the scene, they found defendant **JOHN ARTHUR WIGGINS** ("**WIGGINS**") asleep in his car with the car still on. Law enforcement saw an open alcoholic container in the car.

Law enforcement conducted a search of the car, including of a black bookbag that was within the car. Within the bookbag, law enforcement found an FNH .40 caliber handgun ("the FNH firearm") loaded with approximately 10 rounds of .40 caliber ammunition. **WIGGINS** knowingly possessed the loaded FNH firearm. The firearm and ammunition traveled in interstate commerce prior to their recovery in the State of Maryland. Prior to possessing the firearm and ammunition on September 10, 2022, **WIGGINS** had been convicted—and knew he had been convicted—of an offense punishable by more than one year imprisonment (and his civil rights had not been restored) and was therefore prohibited from possessing a firearm or ammunition.

Inside the car, law enforcement also found marijuana, a scale, .754 grams of cocaine contained in one bag and 4.77 grams of cocaine base distributed across 50 bags. **WIGGINS** knowingly possessed the cocaine and cocaine base with the intent to distribute it. **WIGGINS** possessed the firearm and ammunition in connection with his drug trafficking offense; specifically, the firearm was found in close proximity to the cocaine and cocaine base, and facilitated or had the potential to facilitate **WIGGINS**'s drug trafficking offense. **WIGGINS** was arrested and charged in the Prince George's County District Court and released pending trial.

December 13, 2022 Incident (Counts Three and Four)

On December 13, 2022, law enforcement conducted a traffic stop on a car that **WIGGINS** was driving because the car had an unlawful tint and no front license plate. The traffic stop occurred in Greenbelt, Maryland.

Law enforcement saw two open alcoholic containers in the car. Law enforcement also smelled marijuana emanating from the car. Upon searching the car, law enforcement found a Smith and Wesson Model M&P 22 Compact .22 caliber pistol ("the Smith and Wesson firearm") loaded with approximately 10 rounds of .22 caliber ammunition. The Smith and Wesson firearm and ammunition traveled in interstate commerce prior to their recovery in the State of Maryland. Prior to possessing the Smith and Wesson firearm and ammunition on December 13, 2022, **WIGGINS** had been convicted—and knew he had been convicted—of an offense punishable by

11

**JA66**

more than one year imprisonment (and his civil rights had not been restored), and was therefore prohibited from possessing a firearm or ammunition.

In **WIGGINS**'s car, law enforcement also found a mason jar of marijuana, 2.782 grams of cocaine in one bag, and 8.114 grams of cocaine base distributed across 24 bags. **WIGGINS** knowingly possessed the cocaine and cocaine base with the intent to distribute it. **WIGGINS** knowingly possessed the loaded Smith and Wesson firearm in connection with his drug trafficking offense; specifically, the firearm was found in close proximity to the cocaine and facilitated or had the potential to facilitate **WIGGINS**'s drug trafficking offense.

In total, applying the Guidelines Drug Conversion Table, the quantity of narcotics attributable to **WIGGINS** as to both the September 22, 2022 and December 13, 2022 incidents was equivalent to at least 40 kilograms but less than 60 kilograms of converted drug weight.

SO STIPULATED:

Christopher M. Sarma
Kelly O. Hayes
Assistant United States Attorneys

John Arthur Wiggins
Defendant

John M. McKenna, Esq.
Counsel for Defendant

12

**JA67**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. PX-22-430** |
| | * | |
| **JOHN ARTHUR WIGGINS,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ******* | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Government submits this memorandum in anticipation of the sentencing of the defendant, John Arthur Wiggins (the "Defendant"), which is scheduled for **Thursday, September 7 at 11:30 a.m**.

On May 31, 2023, the Defendant appeared before the Court and pled guilty to one count of felon in possession of a firearm and ammunition, one count of possession with intent to distribute controlled substances, and one count of possessing a firearm in furtherance of a drug-trafficking crime.

As part of the Defendant's written plea agreement, the parties stipulated that a sentence of incarceration between 72 and 108 months is the appropriate disposition of this case. **The Government respectfully requests that the Court sentence the Defendant to a total term of incarceration of 108 months, followed by three years of supervised release.** The Government believes that this sentence is sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553.

## Background

**I.      Procedural Background**

On March 8, 2023, the Defendant was charged in a Superseding Indictment with the following four counts:  Count One, felon in possession of a firearm and ammunition on September 10, 2022; Count Two, felon in possession of a firearm and ammunition on December 13, 2022; Count Three, possession with intent to distribute controlled substances; and Count Four, possession of a firearm in furtherance of a drug-trafficking crime.  ECF No. 19.

Pursuant to a written plea agreement, on May 31, 2023, the Defendant appeared before this Court and pled guilty to Counts One, Three and Four.  ECF No. 27.  The Defendant pled guilty under Federal Rule of Criminal Procedure 11(c)(1)(C) with the parties agreeing to recommend a total sentence of incarceration between 72 and 108 months.

**II.      Stipulated Statement of Facts**

In the Plea Agreement, the parties stipulated and agreed that, if this case had proceeded to trial, the Government would have proven at least the following facts beyond a reasonable doubt.

**September 10, 2022 Incident (Count One)**

On September 10, 2022, law enforcement responded to a car accident in Brentwood, Maryland.  When law enforcement arrived at the scene, they found defendant **JOHN ARTHUR WIGGINS** (“**WIGGINS**”) asleep in his car with the car still on. Law enforcement saw an open alcoholic container in the car.  Law enforcement conducted a search of the car, including of a black bookbag that was within the car.  Within the bookbag, law enforcement found an FNH .40 caliber handgun (“the FNH firearm”) loaded with approximately 10 rounds of .40 caliber ammunition. **WIGGINS** knowingly possessed the loaded FNH firearm.  The firearm and ammunition traveled in interstate commerce prior to their recovery in the State of Maryland. Prior to possessing the firearm and ammunition on September 10, 2022, **WIGGINS** had been convicted-and knew he had

2

**JA69**

been convicted-of an offense punishable by more than one year imprisonment (and his civil rights had not been restored) and was therefore prohibited from possessing a firearm or ammunition.

Inside the car, law enforcement also found marijuana, a scale, .754 grams of cocaine contained in one bag and 4.77 grams of cocaine base distributed across 50 bags. **WIGGINS** knowingly possessed the cocaine and cocaine base with the intent to distribute it. **WIGGINS** possessed the firearm and ammunition in connection with his drug trafficking offense; specifically, the firearm was found in close proximity to the cocaine and cocaine base, and facilitated or had the potential to facilitate **WIGGINS's** drug trafficking offense. **WIGGINS** was arrested and charged in the Prince George's County District Court and released pending trial.

**December 13, 2022 Incident (Counts Three and Four)**

On December 13, 2022, law enforcement conducted a traffic stop on a car that **WIGGINS** was driving because the car had an unlawful tint and no front license plate. The traffic stop occurred in Greenbelt, Maryland.

Law enforcement saw two open alcoholic containers in the car. Law enforcement also smelled marijuana emanating from the car. Upon searching the car, law enforcement found a Smith and Wesson Model M&P 22 Compact .22 caliber pistol ("the Smith and Wesson firearm") loaded with approximately 10 rounds of .22 caliber ammunition. The Smith and Wesson firearm and ammunition traveled in interstate commerce prior to their recovery in the State of Maryland. Prior to possessing the Smith and Wesson firearm and ammunition on December 13, 2022, **WIGGINS** had been convicted-and knew he had been convicted-of an offense punishable by more than one year imprisonment (and his civil rights had not been restored), and was therefore prohibited from possessing a firearm or ammunition.

**JA70**

In **WIGGINS's** car, law enforcement also found a mason jar of marijuana, 2.782 grams of cocaine in one bag, and 8.114 grams of cocaine base distributed across 24 bags. **WIGGINS** knowingly possessed the cocaine and cocaine base with the intent to distribute it. **WIGGINS** knowingly possessed the loaded Smith and Wesson firearm in connection with his drug trafficking offense; specifically, the firearm was found in close proximity to the cocaine and facilitated or had the potential to facilitate **WIGGINS's** drug trafficking offense.

In total, applying the Guidelines Drug Conversion Table, the quantity of narcotics attributable to **WIGGINS** as to both the September 22, 2022 and December 13, 2022 incidents was equivalent to at least 40 kilograms but less than 60 kilograms of converted drug weight.

*See* ECF No. 28-1.

### STATUTORY SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating the range, it must consider the § 3553(a) factors before imposing the sentence. *Id.* at 49–50.

The statutory factors for the Court's consideration under 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide the defendant with needed services; and (3) the need to avoid unwarranted sentencing disparities. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4;

**JA71**

*see also* 18 U.S.C. § 3661. "If the district court decides to impose a sentence outside the guidelines range, it must ensure that its justification supports 'the degree of the variance.'" *United States v. Evans,* 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Gall,* 552 U.S. at 51). The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances. *United States v. Green,* 436 F.3d 449, 456-57 (4th Cir. 2006); *United States v. Moreland,* 437 F.3d 424, 433 (4th Cir. 2006).

## ARGUMENT

The Government submits that concurrent sentences of 48 months of incarceration for Counts One and Three (concurrent with each other) to be followed by 60 months of incarceration for Count Four is the appropriate sentence. Imposing 48 months for each of Counts One and Three reflects a sentence near the bottom of the Guidelines. Imposing a consecutive 60 months for Count Four is the statutory minimum.

**III.    Guidelines Calculations**

The Government agrees with Probation's calculation of the advisory U.S. Sentencing Guidelines' ("Guidelines" or "U.S.S.G.") calculations reflected in the PSR. PSR at ¶¶ 19-31. The calculations in the PSR are the same as in the parties' plea agreement.

**A.    Offense Levels**

**i.    Counts One and Three**

The Government agrees with Probation that Counts One and Three group under U.S.S.G. § 3D1.2(d). Because Count One has the highest resulting offense level, it is used to calculate the Guidelines range.

**Base Offense Level**: The Defendant's Base Offense Level is 20 because he has a prior conviction for a crime of violence, namely first-degree assault. *See* U.S.S.G. § 2K2.1(a)(4)(A). A

4-level enhancement applies because Wiggins possessed the firearm in connection with another felony offense, namely the possession of cocaine with the intent to distribute it. U.S.S.G. § 2K2.1(b)(6)(B). The Government agrees to a 2-level reduction pursuant to U.S.S.G. §3E1.1(a) for the Defendant's acceptance of responsibility and an additional 1-level reduction because Defendant timely notified the Government of his intention to plead guilty, U.S.S.G. § 3E1.1(b).

That results in a total adjusted offense level of 21 as to Counts One and Three.

### ii. Count Four

The Guidelines sentence is the minimum term of imprisonment required by statute, which is five years for an 18 U.S.C. § 924(c)(1)(A)(i) conviction. *See* U.S.S.G. § 2K2.4.

### B. Criminal History Category

The Government agrees with Probation that the Defendant's Criminal History Category is III. PSR at ¶ 43.

### C. Guidelines Range

With an adjusted offense level of 21 and a Criminal History Category III, the Government agrees with Probation that the Defendant's advisory Guidelines range for Counts One and Three is 46-57 months of imprisonment. PSR at ¶ 67. The Guidelines range for Count Four is 60 months. By statute, the term of imprisonment for Count Four must run consecutively. Thus, in total, the Guidelines range is 106-117 months of imprisonment.

## IV. Section 3553(a) Sentencing Factors

The Government respectfully submits that a sentence of 108 months of total incarceration, followed by three years of supervised release, is sufficient, but not greater than necessary, in light of the factors articulated in Section 3553(a).

**JA73**

### A.  Nature & Circumstances of the Offense

The Defendant committed serious crimes, and his conduct merits a significant term of imprisonment that is within the Guidelines.  The Defendant's conduct here is more egregious than many of the felon-in-possession cases that come before the Court.

On two separate occasions—within approximately three months of each other—law enforcement found the Defendant with a loaded firearm as well as narcotics in distribution amounts.  *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (observing that a "carrying a loaded firearm—especially if the carrier has a violent history . . . —has the great potential to escalate into violence").  At least during the September 10, 2022 arrest, Wiggins was intoxicated.  *See United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) (explaining that "the possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community").  The Defendant also posed a danger to the community by carrying a gun illegally while selling illegal drugs.  In addition, the Defendant has admitted in the plea agreement that on both occasions he possessed a loaded gun in connection with his drug trafficking activities.  Based on these admissions, the Defendant could have been convicted of two separate 924(c) counts, which would have resulted in a 120-month mandatory minimum sentence.

Notably, the Guidelines calculations do not take into account that the Defendant possessed two separate firearms on two separate occasions, as both Counts One and Three group and there is no enhancement for the fact that the possession of the firearms and controlled substances occurred on two separate occasions (and with an arrest in between).  In other words, the Guidelines would be the same as if the Defendant had possessed the firearm and ammunition on only one occasion.  As such, a term of imprisonment within the Guidelines is necessary to reflect the consideration of *both* offenses.

7

**JA74**

**B. History and Characteristics of the Defendant**

A 108-month term of incarceration is also justified by the Defendant's extensive criminal history, which spans more than 35 years.  PSR ¶¶ 35-40.

The Defendant's Criminal History Category of III—which Probation correctly calculated—understates the Defendant's criminal history.   The Defendant has four prior convictions that are not included in his Criminal History Category because the sentences were imposed more than fifteen years before the Defendant commenced the instant offenses.  *See* PSR ¶¶ 36-38.   Those convictions include (1) robbery with a deadly weapon for which the Defendant was sentenced to twelve years; (2) housebreaking and wearing/carrying/transporting a handgun, and theft for which the Defendant was sentenced to 10 years; and (3) theft for which the Defendant was sentenced to 10 years.  PSR ¶¶ 35-37.  If these prior four convictions were included in the Defendant's Criminal History, his Criminal History Category would be a VI and his Guidelines Range for Counts One, Three, and Four would be 137-156 months.

The Defendant's prior conviction for first-degree assault and use of a handgun in a violent crime—both indications of the Defendant's violent nature—also supports a long term of incarceration here.  According to the PSR, on March 13, 2000, the Defendant robbed a small-business owner while wearing a full-face mask and carrying a gun.  PSR ¶ 39.  When the victim tried to run away from the Defendant, the Defendant hit the victim in the head with the gun and then yelled, "I'm going to kill you, mother fucker!"  PSR ¶ 39.  When the victim rolled away from the Defendant, the Defendant fired a round, which did not hit the victim.  PSR ¶ 39.  The Defendant received a twenty-five year sentence for this conduct, but was released after 16 years.  PSR ¶ 39.  The Government respectfully contends that the Court should consider the Defendant's past violent use of a gun when imposing a sentence for the instant offenses.

8

**JA75**

### C.  Seriousness of the Offense

This factor weighs in favor of a long sentence.  As discussed in Section IV.A, the Court is sentencing the Defendant for serious crimes that he committed on two separate occasions.  Indeed, the seriousness of the crimes cannot be understated.  The crimes are strikingly and disturbingly similar: on both occasions, the defendant appeared to be intoxicated, with a loaded firearm, with distribution quantities of drugs.  This is an incredibly dangerous combination.

Moreover, the increase in violent crime across the nation, especially firearm-related crime, cannot be tolerated.  While the Defendant did not use the firearm on these occasions to commit a violent act, the fact that the Defendant felt the need to arm himself with a loaded firearm is telling regarding the violent nature of the drug world.  *See Orrego Goez v. United States*, 2023 WL 2045970, at *4 (S.D. Fla. Feb. 16, 2023) ("Guns and drugs 'are a dangerous combination'—as courts across the country have consistently found.") (citation omitted).  Lastly, the Defendant has previously shown he is willing to use a gun to hurt an innocent member of the community.

### D.  Deterrence

#### i.  Specific Deterrence

This factor also weighs in favor of a long sentence.  As discussed above, the Defendant has committed crimes for the majority of his adult life.  But despite prior multi-year sentences, he has continued committing crimes, including crimes of a violent nature.

The facts of his December 23, 2022 arrest also support a long sentence to deter the Defendant.  While on state pre-trial release that included location monitoring, law enforcement found the Defendant possessing a loaded .22 caliber pistol as well as a mason jar of marijuana, cocaine, and cocaine base.  This arrest happened approximately three months after his prior arrest for nearly identical criminal conduct.  Thus, even while on pre-trial release, the Defendant

9

**JA76**

continued committing crimes. *See United States v. Marsh*, 820 F. Supp. 2d 320, 348 (E.D.N.Y. 2011), *as amended* (Nov. 3, 2011) (noting that "specific deterrence is of particular concern" where the defendant continued committing crimes "while released on bail"). A significant sentence is necessary to deter the Defendant from continuing to blatantly and serious ignore the law and continue to commit such dangerous crimes.

### ii. General Deterrence

This factor weighs in favor of a long sentence. The Defendant has been convicted of serious gun and drug crimes. A long sentence here will hopefully deter others from illegally possessing guns or drug trafficking.

### E. Protect Public From Further Crimes

Despite spending much of his adult life in prison, the Defendant has persisted in committing crimes. *See, e.g.*, *United States v. Johnson*, 596 F. App'x 355, 356 (5th Cir. 2015) (affirming denial of downward variance, in part, because of the Defendant's "decades-long criminal history"); *United States v. Washington*, 2023 WL 2208224, at *3 (W.D. Ky. Feb. 24, 2023) (denying motion for compassionate release where "[t]he original sentence was one that reflected the need to deter similar crimes, protect the public, and promote respect for the law" and the defendant's "long criminal history g[ave] the Court . . . little reason to disagree" with the original sentence). A long sentence will incapacitate the Defendant and prevent him from committing more crimes during the period of incarceration.

## V.    Recommended Term of Supervised Release

The Government seeks the imposition of a 3-year term of supervised release that includes the terms listed in the PSR. A significant period of supervised release will promote respect for the law and ensure protection of the public while the Defendant is under supervision.

**JA77**

## VI.    Forfeiture

As part of his sentence, the Defendant has agreed to forfeit  (1) an FNH .40 caliber pistol bearing the serial number FX2U032159; (2) approximately 10 rounds of .40 caliber ammunition contained in the FNH pistol; (3) a Smith & Wesson model M&P 22 Compact .22 caliber pistol bearing serial number HHE3071; and (4) approximately 10 rounds of .22 caliber ammunition contained in the Smith & Wesson pistol.  The Government respectfully requests that the Court incorporate the motion for forfeiture of property and preliminary order of forfeiture, filed on August 22, 2023, (ECF No. 38), into its judgment at sentencing.

## VII.    Restitution

The Government is not seeking restitution in this case.

### CONCLUSION

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully requests that the Court impose a total term of imprisonment of 108 months, followed by three years of supervised release.  The Government views this recommended sentence to be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully Submitted,

Erek L. Barron
United States Attorney

By:    _____/s/_____
Christopher M. Sarma
Kelly O. Hayes
Assistant United States Attorneys

11

**JA78**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this day, August 24, 2023, a copy of the foregoing Government's

Sentencing Memorandum was electronically filed and delivered via ECF to all counsel of record

in this matter as well as sent via email.

_____/s/_____
Christopher M. Sarma
Assistant United States Attorney

**JA79**

```
                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                         GREENBELT DIVISION


_____)
                                 )
UNITED STATES OF AMERICA,        )
                                 )
         Plaintiff,              )
                                 )Docket Number
              vs.                )8:22-cr-430
                                 )
JOHN ARTHUR WIGGINS,             )
                                 )
         Defendant.              )
_____)

              TRANSCRIPT OF SENTENCING HEARING
            BEFORE THE HONORABLE PAULA XINIS
             UNITED STATES DISTRICT COURT JUDGE
          WEDNESDAY, SEPTEMBER 7, 2023, AT 11:30 A.M.

APPEARANCES:

On Behalf of the Plaintiff:

         CHRISTOPHER M. SARMA, ESQ.
         KELLY O'CONNELL HAYES, ESQ.
         U.S. Attorneys' Office
         6406 Ivy Lane 8th Floor, Suite 800
         Greenbelt, MD 20770
         301-344-4431
         Christopher.Sarma@usdoj.gov



On Behalf of the Defendant:

         JOHN MICHAEL MCKENNA, ESQ
         BRENNAN MCKENNA & LAWLOR, CHTD.
         6305 Ivy Lane, Suite 700
         Greenbelt, MD 20770
         301-474-0044
         jmckenna@brennanmckenna.com

                 KATHY CORTOPASSI, RDR, CRR, CRC
                     Official Court Reporter
                  United States District Court
                       Greenbelt, Maryland

       ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
```

2

1              (The Defendant entered the courtroom at
2    11:28 a.m.)
3              THE COURT:  Good morning, everyone.  You all can
4    have a seat.  Will the Government call the case.
5              MR. SARMA:  The case is United States versus
6    John Arthur Wiggins, criminal case number PX-22-430.  We're
7    here today for a sentencing hearing.  Christopher Sarma on
8    behalf of the United States.  I'm here with Kelly Hayes, as
9    well as ATF Special Agent Kate Benedict.
10             MR. McKENNA:  Good morning, Your Honor.  John
11   McKenna on behalf of Mr. Wiggins.  He's seated beside me.
12             THE COURT:  Good morning to you both.
13             And are there family and friends in the --
14             MR. McKENNA:  Yes, Your Honor.  His brother,
15   nephew, his wife, and his mother are present.
16             THE COURT:  All right.  Thank you so much for
17   coming.  I very much appreciate it.
18             All right.  Mr. Wiggins, today is your sentencing.
19   My first question to you is:  Have you had enough time to
20   review the presentence report with Mr. McKenna so we could go
21   forward today?
22             DEFENDANT:  Yes, ma'am.
23             THE COURT:  Okay.  And if you wouldn't mind moving
24   your microphone so we -- there you go.
25             With regard to the presentence report, there's a
              ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

**JA81**

3

1  section that lists the mandatory and standard conditions of

2  supervision, because at some point you'll be placed on

3  supervised release.

4          Did you read those with your counsel?

5          DEFENDANT:  Yes, ma'am.

6          THE COURT:  Do you understand them?

7          DEFENDANT:  Yes, ma'am, Your Honor.

8          THE COURT:  And if I impose them, will you agree to

9  abide by them?

10          DEFENDANT:  Yes, ma'am.

11          THE COURT:  Okay.

12          Mr. McKenna, any objections to any of the standard

13  or mandatory conditions?  We'll talk about the special ones

14  in a minute.

15          MR. McKENNA:  None that -- no, Your Honor.

16          THE COURT:  Okay.  All right.  Very good.

17          Any additions, corrections, or changes to the

18  presentence report?

19          MR. McKENNA:  No, Your Honor.  We just did note

20  that there is a change under the guidelines coming up in

21  November.  We noted that in our memorandum.  It would not

22  apply now, but it wouldn't affect this, in any case.

23          THE COURT:  It would not?

24          MR. McKENNA:  No, it would not.

25          THE COURT:  Yeah.  That's what I thought, but I

**JA82**

4

1   wanted to make sure with you that there weren't any other.

2         Because if I began with the same amendment, it

3   sounds as if it may become retroactively applicable.  So I do

4   appreciate when the parties are bringing it up now, so if we

5   can -- but I think you're right.  I don't believe it applies.

6         Government, any objections?

7         MR. SARMA:  No, Your Honor.

8         THE COURT:  And I see that I'm joined by

9   Ms. Cameron from the probation office.

10        PROBATION OFFICER:  Good morning, Your Honor.

11        THE COURT:  Good morning.  Please let Ms. Crouch

12  know that I thank her very much for a well done report, and I

13  adopt it in total.

14        And, Mr. Wiggins, you probably already figured this

15  out, but I am going to accept the plea agreement so that we

16  can go forward today.

17        DEFENDANT:  Yea, ma'am.  Thank you, Your Honor.

18        THE COURT:  And that may be just what you were just

19  about to ask Mr. McKenna, is what's happening with that.

20        DEFENDANT:  Yes, ma'am.  Thank you.

21        THE COURT:  I probably did say this at your

22  rearraignment, but if you don't -- if you didn't hear from me

23  by now, that means I was going to accept it.  And I am.  I

24  read everything.

25        I understand that the parties have come to this

5

1  range that both sides believe is-- this is how I put it --

2  you correct me if I'm wrong -- is reasonable, is on the

3  spectrum of sufficient but not greater than necessary.

4         Each party will be telling me why you believe your

5  respective positions are correct.  But the essence of a

6  C plea is that the parties have come to this agreement, and

7  they're asking me to adopt it.  And I will and do.  So I

8  accept the agreement.

9         Let me make sure -- so what this means,

10  Mr. Wiggins, so as to Count 4, which is the 924(c), that's a

11  60-month consecutive sentence.  So no matter what I do, I

12  have to impose, by Congress, 60 months consecutive to

13  whatever I do in the underlying.

14         You and the Government have an agreement to a total

15  range of 72 months on the low end to 108 months on the high

16  end.  So I accept that range.

17         And that means what we're really talking about is

18  the delta, the difference between 60 and what else I'm

19  imposing on the underlying -- to get me somewhere between 72

20  on the low end and 108 months on the high end.

21         Have I captured it correctly, Counsel?

22         MR. SARMA:  Yes, Your Honor.

23         MR. McKENNA:  Yes, Your Honor.

24         THE COURT:  All right.  So with that, let me hear

25  first from the Government and then from you, Mr. McKenna.

**JA84**

6

1  And then if there's anybody from the family who wishes to be

2  heard, and then finally Mr. Wiggins if he wishes to be heard.

3          MR. SARMA:  I'm going go the podium, Your Honor.

4          THE COURT:  Sure.

5          MR. SARMA:  I'm used to standing.

6          I think Your Honor summarized it correctly.  I

7  think between the parties, the difference is taking aside the

8  924(c) count for the remaining counts that he pled -- that

9  Mr. Wiggins pled guilty to, as well as the relevant conduct,

10 right, because the relevant conduct is broader.  He agreed to

11 twice possessing a gun illegally, as well as possessing

12 cocaine and cocaine base.

13         THE COURT:  In that short period of time.

14         MR. SARMA:  In that short period of time.

15         I think the appropriate sentence -- Mr. McKenna

16 thinks one year is the proper sentence for that conduct.  We

17 are going to argue at the top end, so that it would be four

18 years would be appropriate for that specific period of time.

19         I'm going -- unless the Court has any specific

20 questions, I just want to make three main points.

21         THE COURT:  Sure.

22         MR. SARMA:  But otherwise primarily rest on the

23 papers, which we laid our position.

24         First, I just really want to highlight again the

25 nature and circumstances of the offense and point out a few

7

1  things.

2          One would be that this would be on both occasions a

3  loaded firearm.  I don't think we -- I'm not sure I in

4  particular make this point enough in my sentencing arguments,

5  but I think there is an appreciable difference between a

6  loaded and an unloaded firearm being carried in a car.

7          You know, in reading back some of the early 922(g)

8  cases when the statute was first enacted, there was a lot of

9  discussion of whether or not you could charge a 924(c) if the

10 gun was unloaded.  And even then the Court said just the

11 presence of the gun is dangerous in connection with any

12 drugs.  Here we have a loaded firearm in a car, which can

13 only suggest that there was at least a willingness to

14 potentially use the gun, given that it was loaded.

15         The other place I looked was actually -- and I

16 noticed that in Justice Breyer's recent dissent in Bruen, he

17 spends the first -- kind of section of his dissent on the

18 dangers of loaded firearms and guns, and how that in and of

19 itself creates an increased risk of violence, even when it's

20 carried lawfully, like in road rage situations.

21         So that was the other concerning factor.  The gun

22 was loaded.  Near drugs.

23         And then lastly I would note, kind of the nature

24 and circumstances of the offense, along with it being within

25 a short period of time, these two separate offenses, was that

8

1   on the first occasion, September, on September 10th,

2   Mr. Wiggins was severely intoxicated.

3         The way that the arrest began was he had smashed

4   into a parked car, still has his foot on the accelerator and

5   they kind of had to -- they had to take him out of the car.

6   Just the fact that someone that inebriated or intoxicated was

7   in possession of a gun in a community is just a dangerous

8   situation.

9         Add in there now law enforcement, you know, really

10  for his health, is trying to get him out of the car to figure

11  out what's going on.  The fact that he possessed a gun is

12  just, quite frankly, too dangerous, would be our position.

13        The second point I'd like to make is on deterrence

14  and protecting the public.  As to specific deterrence, I

15  think there's two points I want to make.

16        First, as noted in the PSR, as well as in our

17  papers -- as well as in our papers that we submitted in

18  opposition to Mr. Wiggins' request for release to go to his

19  father's funeral, we note that I think it's since 1985,

20  Mr. Wiggins has repeatedly violated, been convicted of

21  various -- of gun offenses and drug offenses.

22        Most notable in my mind was the 2000 conviction for

23  first degree assault where he shot at a business owner.  He

24  said, "I'm going kill your ass."  Luckily he missed.  And at

25  that point I think he was sentenced to 25 years; served 16.

9

1          And hopefully that would have been the point at

2     which Mr. Wiggins decided really to turn around his life and

3     kind of get out of this criminal activity, but to the

4     contrary.  After a brief period, admittedly, of returning and

5     re-entering society, he picked up a CDS charge and now these

6     two additional gun charges.  So that is an additional kind of

7     concern for the Government.

8          Also the fact that while he was on pretrial

9     release, after his September 10th arrest, that he then went

10    back and basically committed the same exact crime he had just

11    been arrested for, gives great concern to the Government that

12    a long period of time of incarceration is necessary for

13    specific deterrence.

14         And then to the point of general deterrence, the

15    Government would argue, we continue to face rising gun

16    violence in Washington, D.C. and Prince George's.  There was

17    no violence here, obviously, but just the presence of a

18    loaded gun and narcotics and distribution weights always

19    creates great concern for the community, and I think that

20    also justifies here basically the four years we're asking for

21    above the 924(c) mandatory count.

22         And I think I touched briefly about this when I was

23    talking specific deterrence, but I really think there have

24    been opportunities for Mr. Wiggins to reintegrate to society.

25    He's had some long time periods in jail.  He's come out.  And

10

1    then he's continued to commit crimes.

2            So the Government's position is, at least to

3    protect the public, while he's incarcerated, hopefully that

4    will be a period where he's not committing additional crimes.

5            And then the third point, I wanted to discuss out

6    of the 3553 factors beyond the ones -- while also resting on

7    my papers -- were on characteristics and history of the

8    defendant, because I do think Mr. McKenna's brief did a very

9    good and detailed job discussing who Mr. Wiggins is.  And

10   obviously Mr. McKenna has access to Mr. Wiggins and portrayed

11   some interesting points.

12           But I want to make a couple things clear.  First,

13   we would note from the PSR, he has spent a lot of time -- I

14   think it's notable for the Court to consider -- he's spent a

15   lot of time incarcerated.  And we would say that it is our

16   position that he scored at a criminal history 3 because a lot

17   of his convictions have been timed out.

18           But this is not a situation where we might see

19   where a conviction times after someone had committed an

20   offense in 1970, and then has a very long period of time

21   where the person's not committed any offenses and they pick

22   up a new offense.  So it would be wrong to kind of go all the

23   way back here.

24           There is a bunch of convictions timed out, I think

25   primarily because he was in jail for 16 years.  And so during

11

1  that period of incarceration, he didn't pick up new charges.

2  But there aren't these long gaps in which he's not in contact

3  with the criminal justice system.

4          Second, Mr. McKenna made an argument that he's less

5  likely to be recidivist here because he's over 50.

6  Statistically, that might be true, but I would note that he

7  was 54 at the time of these two offenses.  So maybe if

8  there's a general trend towards less recidivism, as you get

9  older.  That's not necessarily going to be the case here.

10          And then, third -- third point would be that

11  Mr. McKenna and in the brief it mentions Mr. Wiggins' drug

12  addiction.  The Government takes that very seriously.  We

13  would want him in the BOP to get any sort of treatment he can

14  to address that drug addiction.

15          THE COURT:  You would agree there's no -- maybe

16  Mr. McKenna can speak to this.  I don't see any evidence in

17  the PSR of any real treatment.

18          MR. SARMA:  That's correct, yeah.  Up to this point

19  he's not had treatment.  We're hoping that when he goes to

20  BOP, he can get treatment.

21          THE COURT:  He didn't get it at DOC, the way I'm

22  reading it.

23          MR. SARMA:  Exactly. yes.  I would note while we

24  do -- I'm not sure that argument necessarily supports a

25  lesser sentence here.  And I'd argue in part it is because

**JA90**

12

1   Congress in 922(g) has made it an offense to be an addict in
2   possession of a firearm.  That would be its own offense.  I
3   think that it increases the danger if you are --
4           THE COURT:  Well, sure.  But that's on a very -- I
5   agree with you sort of on a population-based statistical
6   analysis.
7           But in fairness to Mr. Wiggins, I just wanted to
8   note that his addictions are long-standing.  When he was 12,
9   right?  And I just don't see when he started.  And I don't
10  see a whole lot of evidence that when he was a child anybody
11  was helping him with that.
12          And then when he became part of our system, which
13  is certainly punitive, but it should also be rehabilitative.
14  Not the federal system.  It just doesn't seem like there's
15  been any help there.
16          MR. SARMA:  We totally agree.  We would think the
17  BOP should be -- has resources, and we would encourage
18  that -- he to get the treatment so he can address those
19  substance abuse disorders.
20          But we're not sure that that -- the argument
21  follows that that would somehow mitigate the amount of time
22  he should spend in prison.
23          THE COURT:  Well, let me ask you.  From the
24  Government's perspective on the investigation side, did this
25  present as a case of a person who's using also selling to

13

1  support the habit?

2          MR. SARMA:  We did not have evidence either way on

3  that.

4          THE COURT:  Either way.

5          MR. SARMA:  Yeah.

6          And then the last point I'd like to make was as to

7  characteristics and history of the defendant, the defendant

8  did have an opportunity, which we don't always see, to kind

9  of turn his life around.  I think he did for a period of

10  time.  He got -- it's in the report that he got a GED while I

11  think in the Maryland DOC.  He had a full-time job at the

12  time of his arrest.

13          But he was still engaging in very dangerous

14  criminal activity.  And I think that also supports four years

15  here on top of the five-year mandatory for the 924(c).

16          So those are the Government's points.  I'm happy to

17  address anything else, Your Honor.

18          THE COURT:  Thank you, Mr. Sarma.  I appreciate it.

19          MR. SARMA:  Thank you.

20          THE COURT:  All right.  Mr. McKenna?

21          MR. McKENNA:  I think I'm going to remain seated

22  here.  I'm not lazy.

23          THE COURT:  No problem.

24          MR. SARMA:  Your Honor I think is 100 percent

25  correct.  The question is what sentence is sufficient but not

**JA92**

1  greater than necessary.  My client -- for a 54-year-old,

2  small-time hustler who had guns, and that's really what's

3  moving the needle in this case.

4          THE COURT:  Right.  The guns.

5          I mean, for me, part of the whole package is

6  Mr. Wiggins' obvious addiction, because that, I think, is

7  setting him up for failure until, you know, you meet your

8  maker, Mr. Wiggins, which could be sooner, rather than later,

9  if you don't take care of yourself.

10         But that is, to me, the key to reducing his

11 recidivism.

12         But you're right, in terms of the danger like to

13 the community, absolutely.  Two loaded guns with 10 bullets

14 in the chambers within a couple months of one another.

15         MR. McKENNA:  We've had that conversation.  I've

16 explained to him that's why you're in Greenbelt, and not in

17 Upper Marlboro is that exact thing.  It was galling to the

18 detectives and then galling to the prosecutors in Upper

19 Marlboro and galling to the prosecutors here in Greenbelt.

20 And that's why he's here.

21         But either way, whether he gets six years or nine

22 years, it's going to be a long sentence.  And for somebody

23 who's 54 years old -- he and I are about the same age, so I

24 know what it's like to get up every single day and feel just

25 a little bit worse every single day.

15

1          THE COURT:  And you like pass the mirror and you're
2    like who is that person?  Who are you?
3          MR. McKENNA:  And that's certainly true.  I
4    understand the Government's points, and they're well taken.
5          But the violence, what violence he's had -- and
6    there was a lot in his past.  The most recent was 23 years
7    ago.  With all due respect to the Government, I think there's
8    a huge difference between being 30 and being 54 years old.
9    And being drug-addicted.
10          And again, a small time dealer, but a big time user
11    who has very poor health.  I'm going to talk about that
12    because I think the Court needs to know why he was doing
13    well.  And then fell off.
14          But, you know, his personal history, you have -- it
15    hasn't been an easy life.  At three years old he was living
16    with his grandmother.  She died.  At 14 he's homeless.  And
17    that sort of began his spiral.  He started using drugs, felt
18    abandoned.  So you got a kid with emotional issues, substance
19    abuse issues, and he starts the criminal conduct.
20          And he serves this long sentence in the Maryland
21    DOC.  Nobody ever gets better by being in the Maryland DOC.
22    It's never happened.  Maybe it did 50 years ago.  The
23    Maryland DOC -- there is zero treatment for anybody.  There's
24    zero vocational training.  There's zero educational.  You can
25    get a GED, maybe, with heroic effort on your own part.

**JA94**

16

1    If I seem embittered, it's only because I've been

2    dealing with the Maryland DOC for my entire career.  And you

3    just don't get anything there.  And that's the sad truth.

4    And day-in/day-out, we see people who have graduated to the

5    federal system who have got nothing from the Maryland

6    Department of Corrections.

7    He finally does get out of the Maryland DOC.  And

8    he's doing great.  It's 2016.  He's working not one job but

9    two jobs for a while, works for the D.C. school system.  Then

10   he gets a great job working as a traffic manager.  And he

11   explained to me what that was.  And now I understand it

12   better.  And he's taking of his three adult kids, eight

13   grandkids.  He's a head coach for the Oxon Hill Raiders, a

14   youth football team.  He's trying to live a good, good

15   law-abiding life.

16   Now, he's still addicted to cocaine and heroin.

17   But he's not using as much because he's filling his life with

18   everything.  But the addictions are still there.

19   What happened to him -- and, Your Honor, around

20   2021, he had these precancerous or cancerous polyps.  He had

21   a portion of his colon -- a large portion of his colon

22   removed.

23   THE COURT:  Was that in the presentence report?

24   MR. McKENNA:  It's not highlighted in it.

25   THE COURT:  I didn't appreciate it was that.

**JA95**

1        MR. McKENNA:  Your Honor, and I'll tell you.  It's

2   only fairly recently, the past couple times that I've talked

3   to Mr. Wiggins that he's really highlighted this.  He's been

4   very passionate about me telling the Court why he -- I don't

5   want to say fell off the wagon, but what happened.

6        But so he gets a portion of his colon removed.

7   He's in the hospital for a month.  He gets released.  He

8   can't stand up.  He has trouble to this day using the

9   bathroom.  They give him morphine during this time period,

10  which is probably not the wisest choice for somebody who is

11  opioid-addicted.  But he ends up not losing his job but he

12  can't work.  They want him to work but he can't work because

13  he can't stand up.  So he's not making money.  He's not able

14  to pay rent.  He's not able to pay for his car.

15        You know, that is sort of what led to this spiral.

16  He's not raising that as an excuse, but he was very, very

17  proud about -- because he never worked before.  But now you

18  have this six-year period of time when he was crushing it.

19  Just doing great.  And then it all came to a screeching halt.

20        And, sadly, he reacted in the worst possible way

21  and committed, started selling drugs, and yes, using drugs.

22  And had the guns.

23        You know, I told him point blank -- and I tell this

24  to clients.  You can have a battleship filled with drugs and

25  it wouldn't be as problematic as if you have guns with the

18

1    drugs.  Not that I'm encouraging people to have drugs.  But

2    the guns are what really cause problems in this case.

3            Your Honor, you have letters from his family and

4    friends.  Despite his problems, he's well loved.  He's well

5    thought of.  And the bottom base he's a good person.

6            Again, he's 54 years old.  You know, these

7    offenses, each of them, each of the two events, were very

8    small amounts of drugs.  You're not going to find much

9    smaller amounts in Greenbelt.

10            There's no violence associated with this case.  No

11    larger conspiracy.

12            THE COURT:  What would Mr. Wiggins -- Mr. Wiggins

13    would be facing -- if the drugs weren't there, and they were,

14    and they were packaged in a way that suggests distribution;

15    right?

16            MR. McKENNA:  Yes.

17            THE COURT:  If they weren't there, he would have

18    been a 20?

19            MR. McKENNA:  Level 20.  And then a Category 3.

20            THE COURT:  Okay.

21            MR. McKENNA:  So, you know, he had the guns.  He

22    possessed them.  He never used them.  Brandished them.  Never

23    threatened anybody.  And, again, that is clearly what's

24    driving this case is the guns.

25            THE COURT:  But I do know -- I mean, it's just

19

1    interesting.  I don't know, yeah, which way it's pointing for
2    me.  But if they were just the guns and loaded and in the car
3    and nothing else happened, they would be a 20 minus 3.  They
4    were not stolen or obliterated serial number or anything like
5    that.  Okay.
6           MR. McKENNA:  So, Your Honor, for all those reasons
7    that I just mentioned, that's why I'm asking the Court to
8    consider the sentence of six years as being sufficient in
9    this case.
10          And I am asking you to recommend the RDAP.  You
11   can't get many benefit from a sentence standpoint.  But that
12   doesn't matter.  If he had had a -- what is it -- 500-hour
13   drug program when he was about to leave the Maryland DOC, you
14   know, I hope we wouldn't be here.
15          THE COURT:  I think he can get benefit from a
16   sentence-wise, because even though you might not get a
17   reduction, Mr. Wiggins, you'll come home hopefully healthier
18   because it will be at the end of your sentence, and it's a
19   year-long program.  You do get some perks with it.  But it'll
20   just hopefully give you some tools for when you get home.
21          And that can only help because you'll be on
22   supervision.  And you're not going to want to be looking at
23   this old lady who's going to be -- you and I are
24   contemporaries, and we don't want to be looking at each other
25   on a violation of supervision.

**JA98**

20

1          We want to be talking about your success and you
2     enjoying your grandkids; right?
3          DEFENDANT:  Yes, ma'am.
4          THE COURT:  All right.
5          MR. McKENNA:  Your Honor, I'd be redundant if I
6     kept talking, so I'm asking you to consider six years as
7     sufficient.  He'll be in his late 50s.  And in talking to
8     him, belatedly, I think he understands his situation.  So
9     that would be my request, Your Honor.
10          THE COURT:  I did read Mr. Wiggins' wife's letter
11     and his mom's letter.  But does anybody from the family wish
12     to be heard?
13          MR. McKENNA:  Anyone wish to address the Court in
14     regard to Mr. Wiggins?
15          THE COURT:  You don't have to.  I just wanted to
16     make sure if you wished.
17          MAN:  He had his problems.
18          MR. McKENNA:  If you want to address the Court, you
19     can use the podium.
20          I think one person wants to address the Court.
21          MAN:  Yeah.  The man did have his problems like all
22     of us do.  He has more severe than us.  But like he said,
23     he's well loved by everybody who come in contact with him.
24          THE COURT:  Sir, can I get your name?
25          MAN:  Michael Wiggins.

**JA99**

21

```
 1            THE COURT:  And you're Mr. Wiggins' uncle; is that
 2    right?
 3            MAN:  Yes, ma'am.  The dude -- I'm sorry.  You said
 4    uncle?
 5            MR. McKENNA:  His brother.
 6            THE COURT:  His brother.  Sorry.  Okay.  I got it.
 7            MAN:  I'm sorry.  I wasn't.  I was paying attention
 8    to him.  He's -- and this is his grand nephew.
 9            THE COURT:  And so who do I have in front of me,
10    for the record?  Yamir.
11            THE COURT:  Hi, Yamir.
12            MAN:  Say hi, baby.
13            But he's well loved by everybody that's around him.
14    Now, all of us -- me, too, you know, but I can guarantee you
15    that when he get out, he would have everything he need --
16    could possibly want.  Because I'm doing very well as an
17    entrepreneur right now.
18            THE COURT:  Good.  Good.
19            MAN:  So whenever he come, I got him.  I just hope
20    he ain't gone.  Thank you.
21            THE COURT:  Thank you.
22            Hi, ma'am.
23            MR. McKENNA:  State your name for the record.
24            DEFENDANT'S MOTHER:  Good morning, Your Honor.  I'm
25    Tiwana Riley.  I'm the mother of John Wiggins.
```

22

1          MR. McKENNA:  I'm sorry.  May need a minute.

2          THE COURT:  Sure.  Of course.  Take your time.

3          DEFENDANT'S MOTHER:  John is my firstborn.  I had

4   him when I was 16.  So it wasn't easy for either of us.  Yes,

5   he got in trouble and did 16 years.  I'm not proud of that.

6   But what I am proud of is the fact that when he came home, he

7   worked.  He bought automobiles.  He got his own apartment for

8   the first time in his life.  And I was proud of all of those

9   things because he'd never done that before.

10         I just hope that this is his last time being in a

11  courtroom.  And I'm hoping that I'll still be around when

12  he's released.  Thank you.

13         THE COURT:  All right.  Thank you.

14         MRS. WIGGINS:  My name is Keisha Wiggins.  I'm his

15  wife.

16         THE COURT:  Ms. Wiggins, is it possible -- maybe

17  Mr. McKenna can help you to just have the microphone --

18         MRS. WIGGINS:  You can barely hear me and I can

19  barely hear you.  That's why I talk like this.

20         THE COURT:  Is this better?

21         MRS. WIGGINS:  Can you hear me now?

22         THE COURT:  I can.

23         MRS. WIGGINS:  I just wanted to take the

24  opportunity to speak.  We've been married for 13 years, but

25  we've been together for over 30.  We don't always see eye to

23

1  eye all the time.  But I've been taking it one day at a time.
2  I've just been proud of him because he has been really trying
3  to turn his life around.  And a lot of people don't have that
4  opportunity.
5          So I'm just proud of him and I'm just going to keep
6  encouraging him to do better, you know, because we all need
7  to do better.
8          I don't want to take up a lot of time.  But I just
9  want him to keep his head up, and I'm just going to try to
10  keep encourage him.  We all move forward.
11          THE COURT:  Well, Ms. Riley (sic), I wanted to let
12  you know that the one thing that really stood out in your
13  letter to me was how you kept with Mr. Wiggins during those
14  16 years, and you made sure that he saw the grandkids.  Am I
15  right about that?  Did I read that right?  That you were
16  there and you brought those kids and you kept that
17  connection.
18          I just wanted to say I think that it's part of why,
19  maybe, he did so well when he got home.  Because a lot of
20  people don't have that.
21          And you know, family for a lot is everything.  So I
22  just wanted you to know I recognize that.
23          MRS. WIGGINS:  Thank you.  I appreciate it.
24          THE COURT:  That's part -- the tricky part of
25  federal sentencing is you don't always end up as close to

**JA102**

24

 1  your family physically.  It's tougher.  It will be tougher

 2  because you might be further away from them.

 3          Anyone else, Mr. McKenna, before I turn to

 4  Mr. Wiggins?

 5          MR. McKENNA:  No, Your Honor.

 6          THE COURT:  Okay.

 7          So, Mr. Wiggins, this is now your opportunity to

 8  say anything you wish for me to know or anybody else here.

 9  You don't have to speak.  You have the absolute right to

10  remain silent and I won't hold your silence against you.

11          But before I impose sentence -- this is obviously a

12  very important day for you and your family -- if there's

13  anything you wish to say, I'm all ears.

14          DEFENDANT:  Yes, ma'am.  Thank you for the Court

15  for hearing me.

16          I'd like to thank my mother, my wife, my brother

17  for showing up.  It's kind of tough for me right now.  But

18  losing my dad kind of opened a lot of doors for me to

19  understand a lot of things that I didn't understand.

20          The one thing that I've always done in my life is

21  I've accepted my responsibilities for my actions and things

22  that I've done.  And this was one of them.

23          However, I hear the State speaking on behalf of

24  protecting the community.  My question is:  When you go to

25  the state system and you come out of the state system and you

**JA103**

25

1   don't get anything and you go in the street and you do

2   everything possible to try to become a mainstream citizen as

3   you say, who protects me?  What laws?  What things protect

4   me?  What protect myself?

5           Unfortunately, the job that I had had me working in

6   very bad environments.  Like, I worked in the streets of

7   Baltimore City 75 percent of the time.  I work in the streets

8   of D.C. the rest of the time.  So it's kind of hard trying to

9   find a balance in being right and still being able to protect

10  yourself.

11          Yes, I did -- I owned a firearm.  Never have I

12  pulled it out.  Never have I fired it.  I only -- my intent

13  solely is for -- to protect myself.  Because everything

14  protects everybody else.  What protects me?  I have to

15  protect myself at some point.

16          It may not have been the right choice.  It may not

17  have been right.  But at some point I still have to protect

18  myself.  I live in the inner city.  Like, unfortunately, like

19  doctors, lawyers and all these other people don't have to

20  deal with the same shenanigans I have to deal with every day.

21          For seven years I came home with the -- I used to

22  talk to my wife about me wanting to maybe do things for my

23  community and try to give the kids something better to look

24  up to, something better to do for their self because I didn't

25  have those things.

26

1          So I wanted to be someone -- when these kids looked

2     at me, someone that could guide them or help turn them in the

3     right direction.  I didn't want them to go in the direction

4     that I went in.

5          So I guess you could say I had mentor on my mind.

6          THE COURT:  You had what on your mind?

7          DEFENDANT:  Mentor.  Becoming a mentor.  To just

8     try to keep -- that's why I coached football; to be around

9     kids.  I loved being around kids.  But I coached football to

10    allow these kids to be, to be free mentally and physically

11    without having, like -- you would be surprised some of the

12    conversations you have with these kids, and all they talk

13    about is you beefing with somebody that you don't even know.

14    You out here trying to hurt somebody that you don't even

15    know.  I despise that.  I disagree with that 100 percent, you

16    know.

17         So my goal was to actually -- to try to become a

18    better person.

19         Now, during this process, like I was working.  I

20    was doing everything I felt like would make me prosperous in

21    society.  This surgery came and like -- it like beat me down

22    so bad.  It broke me down so bad.

23         THE COURT:  What part of it did?  Was it the

24    physical?  Was it the scare?  What was it?

25         DEFENDANT:  I mean, being in my situation, for five

**JA105**

27

1   years going to work every day, feeding yourself, putting

2   clothes on your own back.  I didn't have any help from

3   anywhere.  So, everything that I did and gained, I gained for

4   my own strength.  It felt really good for the very first

5   time.  Like, I worked and got everything that I owned.  I

6   never did that.

7          So, I know that there's plenty of space for growth

8   and developing me.  But my question is:  How do you get

9   growth and development when any and everything that you do

10  leads you back to the same hole?

11         Like, I don't care what I do, I don't care how well

12  I do it, I don't care what I do, I'm still looked at by what

13  was on the piece of paper 20, 30, 40 years ago.

14         THE COURT:  Are you saying that that's what beat

15  you down when you got sick?

16         DEFENDANT:  I couldn't go to work.  I couldn't even

17  stand up.  I was in the hospital for a whole month.  For the

18  first month I was out of the hospital, I couldn't even leave

19  out the house.  I couldn't even walk.  I couldn't even stand

20  up straight.  I still had staples in my stomach.

21         Like, to be in the situation where at one point

22  everything is great.  You're doing two jobs.  Everything is

23  fine.  You're not in the midst of being anywhere in this type

24  of atmosphere.

25         And to go from one day to the next and then the

28

1  bottom drop out is like, wow.

2         But now the whole time I was in the hospital, you

3  pumping morphine in me.  And I'm telling you, like, I used

4  opiates before.  I don't want it.  But this is what they

5  giving me for pain.

6         So leaving the hospital in the pain and, like,

7  you're not giving me -- you didn't give me what you were

8  giving me in the hospital.  So at some point I have to find a

9  way for myself to be able to act.  I couldn't even act.  I

10 couldn't get out of the bed.  I couldn't do anything.

11        I got to say life is about choices, you know.  When

12 you're put in bad situations, you make bad choices.  When I

13 was put in good situations, I made good choices.

14        THE COURT:  So let me ask you.  What is it this

15 time around -- because the real trick, right, the real key to

16 life and to success is to be put in bad situations and make

17 good choices.

18        What do you see for yourself to get you there?

19        DEFENDANT:  To be totally honest, I just have to

20 figure it out.  I have some time to figure it out.  I can't

21 sit here and give you an answer right now because I don't

22 even know the answer.

23        THE COURT:  That's the most honest answer that I've

24 heard in a long time.  Because that's very insightful.  And

25 that's -- if there's any silver lining here is that you're

1  not in the state system.

2          DEFENDANT:  Well, coming home at 60 years old

3  expecting to get a job and do the same things is like -- I

4  mean, it's hard to see right now for me.  You know what I

5  mean?  It's really hard for me to see, because for me, it

6  looks like regardless no matter what I do, I'm still going to

7  be held accountable.  I'm still going to be held for

8  everything at any time, regardless of who I am, regardless of

9  what I do, regardless of what changes I make in my life, I'm

10 still judged by a piece of paper.

11         THE COURT:  And that is true.  Do you know what

12 they call that?

13         DEFENDANT:  I'm never going to get a fair shake

14 from anywhere.  But I just have to find a means.  I have to

15 find a way; a means.

16         THE COURT:  Because that is what we call in the

17 law, that is a fact beyond change.  And that is until society

18 changes in that regard, right, and sees it differently -- and

19 there are places -- there are people and there are places who

20 do.  But it's not everybody; right?

21         And part of what I hope probation, when you're on

22 supervision, can do, is to help you find those places where

23 you get a little bit of understanding.

24         But you got to want it; right?  And it seems to me

25 that you do because the 5-1/2 years that you spent getting

30

 1  up, working every day, getting your hands dirty, doing what
 2  had to be done shows me that's something you really want.
 3       There are places and people in our community who
 4  were just where you were, too.  Spent decades in prison when
 5  they were kids, and got out and they wanted it as much as you
 6  do and they've built businesses and lives.  And they do
 7  actually pay it forward.  And they help folks who also need
 8  jobs or who also need just understanding, frankly.  Like,
 9  I've been where you are.
10       DEFENDANT:  It helps.
11       THE COURT:  And having that kind of --
12  "understanding" is the only word I could think of it --but
13  the shared experience and to help you stay focused on doing
14  the right thing, whether for you it may be staying in drug
15  treatment; right?  Because you know that's going to be the
16  rest of your life.  Like whatever medicine you might be on
17  for your physical condition, you got to think about the
18  addiction as the same way.  It's a physical illness; right?
19       It's not a -- so whether it's that, helping you
20  stay focused on your health, focused on your job, focused on
21  giving back to the community -- so much of what you're
22  saying, Mr. Wiggins, for whatever it's worth, I've heard from
23  those other returning citizens as being really important to
24  them.  Like vital, as important as breathing.
25       So my hope for you is that when you are on

31

1  supervision -- and you will get there -- you take advantage

2  of these new communities.  They're new now.  And by the time

3  you get home, they'll have even a little more, you know,

4  history.  Maybe you won't feel so by yourself if you had

5  that.  But I guarantee you, you will not be without

6  supervision and treatment and programs, because our

7  department is really good at that.

8         And again, we judges stay on top of it.

9         I'm going to tell you what I've told a lot of

10 people, and I hope you hear it and you take advantage of it.

11 The time that you spend where you're thinking about how you

12 want this to go and working toward a better future, while

13 you're in, I want to hear from you.

14        I know that might sound like, yeah, whatever, this

15 one, she's a weird duck, but okay.  I really do because, one,

16 I think it's very important if I'm going to take on the

17 responsibility and the obligation of giving you, you know,

18 whether it be 108 months or 72 months or something in the

19 middle, if I'm going to take on that responsibility, then I

20 better be prepared to hear from you about your honest

21 experiences.  And if it's bad, I want to hear it.  And I want

22 to know what I can do.

23        If it's good, I want to hear it.  And I promise you

24 I'll write you back.  And if it gives you this much, you

25 know, for the record, an inch of support, I want to give it

32

1  to you.  But I can't know unless you tell me.

2          Similarly, when you're on supervision, I want to

3  know before you have troubles:  What can we do?  You

4  hopefully will see supervision not as, you know, a game of

5  gotcha; us against them.  Because I know -- I'm sure you've

6  been there.  And it takes a while to build the trust.

7          But if you have that experience again, you've got

8  to tell Mr. McKenna or the Court.  Otherwise we can't

9  really -- we don't know what's going on.  And we don't know

10 until it's too late; until there's a violation pending.  Or

11 until you're back in a spot that, you know, you're having

12 these same experiences again.  And that's what we're trying

13 to help you avoid.

14         Does that make sense to you?  A little bit?

15         DEFENDANT:  Yes, it does.  But I have one question.

16         THE COURT:  Sure.

17         DEFENDANT:  Like, in preparation for all these

18 things and doing all these things, when do I ever become

19 free?  Is this system designed for me to be free?  Because

20 from where I sit, all I see is a continuous, continuous

21 process for me to be held accountable.

22         THE COURT:  Well.

23         DEFENDANT:  So how do you -- I'm just asking the

24 question because I'd like to know.  How do you --

25         THE COURT:  You agree you have to be held

**JA111**

33

1  accountable.

2          DEFENDANT:  Yeah.  How do you go and serve all your

3  time and come home and try to be better or work towards being

4  better, but you're still in that catch-22.  When do I ever

5  become free?  When do I ever, as they say, pay your debt to

6  society?

7          Because I get sentenced for whatever I do.  I go

8  and do my time, and I come back.  And it's you can't do this.

9  You can't do that, you can't do this, you can't go here.  You

10 can't, you can't, you can't.  And that's consistency of what

11 you hear because you've been behind the door for so many

12 years or so much.

13         So you consistently hearing, you can't do this, you

14 can't do that.  You can't do this.

15         THE COURT:  Which is why, Mr. Wiggins, I say I

16 don't have that answer for you.  I haven't lived that

17 experience.  It would be dishonest of me to try to answer

18 that question for you.  And I'm not in that business.

19         But that's kind of why I was talking about groups

20 and individuals who have asked that same question after

21 coming home, after doing, I'm telling you, decades in prison.

22 And they have to answer those questions, right, on their own.

23 And then they want to help other people answer those

24 questions.

25         Because that kind of frustration -- that'll eat at

34

1  you.  That will be one brick wall after another.

2          It's understandable.  It's just not something I can

3  answer for you.  But my hope is that we can find people who

4  can.  Does that make sense?  Does that make a little more

5  sense?

6          DEFENDANT:  Yes, ma'am.  Yes, ma'am.

7          THE COURT:  Okay.

8          Well, I do thank you for being sort of straight

9  about -- there was a day where I sat where Mr. McKenna sat.

10 And there was a day where we had different prosecutors who

11 didn't necessarily appreciate when -- and different judges.

12 It was a totally different system where we just did not

13 discuss how difficult prison can be.  And I really do

14 appreciate the fact that we can have those discussions now.

15         You still might not get the sentence that you want,

16 Mr. Wiggins, but it is with a full understanding of what

17 prison means and what we as a court have to do, you know, our

18 part to make sure that when you come home, if you're doing

19 your part, if you are living up to your obligations, that we

20 are not falling down on the job.

21         So I appreciate being able to have this

22 conversation with you.

23         DEFENDANT:  Thank you.

24         THE COURT:  Okay.  So I've got to look at the

25 3553(a) factors.

35

 1          Part of why I was asking the questions about the
 2   guidelines is because the guidelines are one of the factors.
 3   And they are important.
 4          In your situation, if I see it right, the
 5   underlying guideline is 46 to 57 months, and then I've got to
 6   add 60 months.  That's the guidelines.
 7          You and the Government have come to an agreement
 8   where essentially the Government is asking me a little bit
 9   above the low end of the guidelines, and you are asking me to
10   go below the guidelines.
11          So the guidelines are a factor.
12          And then I've got to look at all the 3553(a)
13   factors.  And if this were just about getting you home, this
14   would be an easy decision.  But I got to look at everything.
15          And that includes the seriousness of the offense.
16   And all depending on which -- how you point the lens, right,
17   the seriousness of the offense looks differently.
18          The Government is absolutely correct.  You had on
19   very short occasions, right, two loaded firearms with drugs
20   that you were using.
21          You have made the point that essentially they were
22   kind of separate, that you'd been carrying a gun for
23   protection, which is both good and -- or not good but
24   understandable, and also kind of means you probably had it
25   for a lot longer.

36

1        You've got to figure out a way, as you go through

2  your treatment, how you can feel safe without carrying a

3  firearm.  Because you just can't.  That's another fact beyond

4  change.  It's against the law.  You will be back in that seat

5  regardless of how old you are if you're caught with a

6  firearm.  So you got to find a way.  That's one.

7        And the drug piece, I hear what -- and it's

8  consistent with the facts.  It's very serious.  You were

9  clearly using and maybe selling to use.  But you were not --

10  there's no evidence that you were returning to a life of

11  violence and that you've gotten very far away from that.

12        So it's serious, no doubt.  But it's serious, you

13  know, about where the parties have put it.

14        I do have to promote respect for the law.  But

15  respect for the law takes everything into account.

16        I have to balance what will deter you, what will

17  deter others.  And then I've got to look at you.  And this is

18  a very, very hard call.

19        So, Mr. Wiggins, I'll say this.  I'm going to go a

20  little bit above what you have asked me to impose.  I'm not

21  going to give you as much as the Government has asked.

22        I ask you to think about that as you, you know, you

23  think about how you want to be a model for society, you want

24  to show kids a better way.

25        Hopefully you can think about this process in

1  showing society there's a better way, too.

2          And what I mean by that is:  If you really do make

3  the best of a horrible situation, if you do the treatment

4  while you're in, if you come home and you fall back into the

5  good stuff in your life, right, and you do well on

6  supervision, you are telling society:  You don't have to keep

7  locking us up over and over and over again.  There's a better

8  way of doing it.

9          When people end up in that cycle, then what

10  everybody else says is:  See?  All we can do is prison.

11  There's nothing else that will work.

12          You can be part of that conversation in your own

13  conduct.  You can show people there's a better way.

14          I've asked others:  Prove others, prove all those

15  naysayers, as they say, prove them wrong.  Prove me right.

16  Prove you right.  Does that make sense?

17          So I do believe that the sufficient, but not

18  greater than necessary, sentence is 80 months.  It takes into

19  account just how serious these two very close-in-time

20  offenses were, the fact that those guns were loaded.

21          But it also considers the fact that you've had zero

22  treatment.  Whatever you've done for yourself, you've done it

23  for yourself.  And that is no easy feat, given the challenges

24  that you had before you did the 16 years.  And then you did

25  the 16 years.  You're going to have challenges when you get

38

1  home.

2         I do consider the three years that you'll be
3  placed -- no, five years of supervision; right?  Because it's
4  five years on the gun.

5         Supervised release is all in your hands.  You do
6  well, it can be ended early.  You don't do well, it's just a
7  constant cycle with me.

8         But I consider it part of the sentence.  And it's,
9  like you said, it's don't do this, don't do that; right?  So
10 five years following the 80 months is significant.  And I do
11 find that that is also sufficient, but not greater than
12 necessary, to achieve all the purposes of sentencing.

13        So while you're in prison, absolutely I strongly
14 recommend the residential drug abuse treatment program and
15 any other programming that you want:  One, to keep you active
16 and busy and forward-thinking and, two, because you will be
17 able to use it when you get home.

18        So is there anything else, any kind of programming
19 you want to do?  HVAC, electrical, college courses, while
20 you're in that I can recommend?

21             DEFENDANT:  HVAC.

22             THE COURT:  HVAC.  Okay.  Strongly recommend that,
23 okay, because the RDAP will come at the end for the year at
24 the end.

25        When you are home, in addition to the standard and

**JA117**

1    mandatory conditions, the special assessment, which is $300,

2    $100 on each count, will be due while you're on supervision.

3    I'm not going to make you part of the inmate financial

4    responsibility program.  It's hard enough to get what you

5    need while you're in.

6          You must participate in a substance abuse treatment

7    program, follow the rules and regulations of that program, as

8    well as testing.

9          I'd also like Mr. Wiggins to be evaluated for a

10    mental health treatment program or a dual diagnosis program.

11    Not be -- this is in healthy recognition that you've been

12    through a lot.  And I don't know what an evaluation will

13    show.  But one of the things that we've been talking about

14    all morning is how little you got when you did a very long

15    period.  And I don't want to make the same mistake.

16          So I want you to have that evaluation.  We'll

17    figure out from there whether mental health treatment is

18    appropriate.  So it'll be evaluation and mental health

19    treatment to be supervised by probation.

20          Those are all the special conditions.  There will

21    not be a fine.

22          I'll say this, though, if you're on supervision and

23    you're having difficulty with finding work, that's something

24    I want to know sooner rather than later, because all these

25    folks that we're talking about now, that's one of the biggest

40

1   things that they give people on supervision is a chance, is a
2   chance to work.
3          And if you want to work, the chances just grow
4   because other returning citizens are employing really hard
5   workers to work, maybe even better jobs than what you've been
6   at.
7          I don't want to paint a rosy picture of it, but I
8   want you to know that resource is there; okay?
9          DEFENDANT:  Yes, ma'am.
10         THE COURT:  Any aspect of the sentence -- let me do
11  it right.  Mr. Ulander, you're not going to give me the hairy
12  eyeball.  Hold on.
13         Count 1, the sentence will be 20 months.
14         Count 2, 20 months concurrent -- Count 3 rather,
15  concurrent with Count 1.
16         Count 4, 60 months consecutive to Counts 1 and 3.
17         As to supervised release, Count 1 is three years,
18  Count 3 is three years concurrent with Count 1, and Count 4
19  is five years concurrent with Counts 1 and 3.
20         We've gone over the standard and -- standard,
21  mandatory, and special conditions.
22         There's a $100 special assessment for each,
23  totaling 300.  That will be due and payable while you're on
24  supervision.
25         There will be no fine.

41

1         Is there any aspect of the sentence I've neglected?
2  Forfeiture.  Okay.
3         I'm going to sign the preliminary order of
4  forfeiture, which is for the firearms and ammunition seized.
5  And that is by agreement; am I right about that, Mr. McKenna?
6         MR. McKENNA:  That's correct, Your Honor.
7         Your Honor, could you also make a recommendation
8  that he serve that sentence at Butner?
9         THE COURT:  Sure.  Absolutely.  With RDAP and HVAC,
10  FCI Butner.  Absolutely.
11         Is there also any request for a medical evaluation?
12  Given Mr. Wiggins's --
13         MR. McKENNA:  Yes.  Please, Your Honor.
14         THE COURT:  We will strongly recommend a medical
15  evaluation.  I do hope you get designated to Butner because
16  they have a very good hospital attached to it.
17         DEFENDANT:  Thank you.
18         THE COURT:  Government, anything that I've
19  neglected to --
20         MR. SARMA:  One very minor point, Your Honor.
21         THE COURT:  Sure.
22         MR. SARMA:  I think you still need to expressly
23  adopt the PSR.  I was just worried about --
24         THE COURT:  I did do that.  I adopted the
25  PSR unchanged.

42

```
 1              Is there something else?
 2              MR. HAGAN:  Maybe I misheard it.  I'm always
 3    worried that --
 4              THE COURT:  You heard that?
 5              PROBATION OFFICER:  There were not any changes.
 6    But I heard there were no changes.
 7              THE COURT:  There were not any changes.
 8              Yes.  Okay.
 9              And, thank you, Mr. Sarma, yes.  The record is
10    clear on that.  I do adopt the PSR, unchanged.
11              Anything else?
12              MR. SARMA:  The only thing left is the Government
13    would now move to dismiss the opening count in the
14    indictment.
15              THE COURT:  Okay.  And that is count --
16              MR. HAGAN:  2.
17              THE COURT:  And Count 1 of the original indictment?
18              MR. HAGAN:  And Count 1 of the original indictment.
19    That's correct, Your Honor.
20              THE COURT:  Okay.  So Count 1 of the original,
21    Count 2 of the superseding are dismissed under Rule
22    11(c)(1)(A), I find that to be reasonable.
23              Mr. Wiggins, if you are dissatisfied with my
24    sentence, I don't recall whether you gave up your right to
25    appeal, but please speak with Mr. McKenna about that, because
```

43

1    you have to note your appeal within 14 days; otherwise I wish
2    you the best of luck.
3             And thank you all for coming.
4             MR. McKENNA:  Thank you, Your Honor.
5             THE CLERK:  All rise.  This honorable court now
6    stands adjourned.
7             (Court is adjourned at 12:36 p.m.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CERTIFICATE OF OFFICIAL REPORTER

    I, Kathy Cortopassi, RDR, CRR, CRC, Federal Official
Court Reporter, in and for the United States District Court
for the District of Maryland, do hereby certify that pursuant
to Section 753, Title 28, United States Code, that the
foregoing is a true and correct transcript of the
stenographically reported proceedings held in the
above-entitled matter and that the transcript page format is
in conformance with the regulations of the Judicial
Conference of the United States.

    Dated this the 26th day of November, 2023.


                    /s/ Kathy Cortopassi
                    Kathy Cortopassi, RDR, CRR, CRC
                    U.S. Official Court Reporter

Sheet 1 - Judgment in a Criminal Case with Supervised Release (Rev. 12/2019)                    Judgment Page 1 of 7

BEU

# United States District Court
## District of Maryland

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| | (For Offenses Committed on or After November 1, 1987) |
| v. | |
| | Case Number: PX-8-22-CR-00430-001 |
| **JOHN ARTHUR WIGGINS** | |
| | Defendant's Attorney: John McKenna |
| | Assistant U.S. Attorney: Christopher Sarma, Kelly Hayes |

**THE DEFENDANT:**

☒ pleaded guilty to counts <u>1, 3 and 4 of the Superseding Indictment</u>

☐ pleaded nolo contendere to count(s) _____, which was accepted by the court.

☐ was found guilty on count(s) _____ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 922(g)(1) | Felon In Possession Of A Firearm and Ammunition | 09/10/2022 | 1s |
| 21 U.S.C. § 841(a)(1), (b)(1)(C) | Possession With Intent To Distribute Controlled Substances | 12/13/2022 | 3s |

The defendant is adjudged guilty of the offenses listed above and sentenced as provided in pages 2 through <u>7</u> of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984 as modified by <u>U.S. v. Booker</u>, 543 U.S. 220 (2005).

☐ The defendant has been found not guilty on count(s) _____

☒ Count <u>1 of the Indictment and Count 2 of the Superseding Indictment</u> are dismissed on the motion of the United States.

**IT IS FURTHER ORDERED** that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

September 7, 2023
Date of Imposition of Judgment

*Paula Xinis*        9/7/23

Paula Xinis                    Date
United States District Judge

Name of Court Reporter:   Kathy Cortopassi

**JA124**

Judgment in a Criminal Case (Rev. 12/2019)                                          Judgment Page 2 of 7

**DEFENDANT:**    **JOHN ARTHUR WIGGINS**

**CASE NUMBER:**    PX-8-22-CR-00430-001

## ADDITIONAL COUNTS OF CONVICTION

| <u>Title & Section</u> | <u>Nature of Offense</u> | Date Offense <u>Concluded</u> | Count <u>Number(s)</u> |
|---|---|---|---|
| 18 U.S.C. § 924(c) | Possession Of A Firearm In Furtherance Of A Drug Trafficking Crime | 12/13/2022 | 4s |

**JA125**

Sheet 2 - Judgment in a Criminal Case with Supervised Release (Rev. 12/2019)                                     Judgment Page 3 of 7

**DEFENDANT: John Arthur Wiggins**                                    CASE NUMBER: PX-8-22-CR-00430-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **20 months as to Count 1 of the Superseding Indictment, 20 months as to Count 3 of the Superseding Indictment to run concurrently to Count 1, 60 months as to Count 4 of the Superseding Indictment to run consecutively to Counts 1 and 3, for a total term of 80 months.**

☒ The court makes the following recommendations to the Bureau of Prisons:
   ☒ That the defendant participate in the residential drug abuse program for which he may be eligible.
   ☒ That the defendant participate in an HVAC program for which he may be eligible.
   ☒ That the defendant be designated to FCI Butner for service of his sentence.
   ☒ That the defendant participate in any appropriate medical evaluation and treatment program.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ a.m./p.m. on _____.
   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender, at his/her own expense, to the institution designated by the Bureau of Prisons at the date and time specified in a written notice to be sent to the defendant by the United States Marshal. If the defendant does not receive such a written notice, defendant shall surrender to the United States Marshal:

   ☐ before 2pm on _____.

**A defendant who fails to report either to the designated institution or to the United States Marshal as directed shall be subject to the penalties of Title 18 U.S.C. §3146. If convicted of an offense while on release, the defendant shall be subject to the penalties set forth in 18 U.S.C. §3147. For violation of a condition of release, the defendant shall be subject to the sanctions set forth in Title 18 U.S.C. §3148. Any bond or property posted may be forfeited and judgment entered against the defendant and the surety in the full amount of the bond.**

## RETURN

I have executed this judgment as follows:

   Defendant delivered on _____ to _____ at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By:_____
DEPUTY U.S. MARSHAL

**JA126**

Sheet 3 - Judgment in a Criminal Case with Supervised Release (Rev. 12/2019)                                    Judgment Page 4 of  7

**DEFENDANT: John Arthur Wiggins**                              CASE NUMBER: PX-8-22-CR-00430-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **3 years as to Count 1 of the Superseding Indictment, 3 years as to Count 3 of the Superseding Indictment, 5 years as to Count 4 of the Superseding Indictment, with all counts to run concurrently for a total term of 5 years.**

**The defendant shall comply with all of the following conditions:**

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

## A.    MANDATORY CONDITIONS

1)  You must not commit another federal, state or local crime.
2)  You must not unlawfully possess a controlled substance.
3)  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse.  *(check if applicable)*
4)  ☐  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5)  You must cooperate in the collection of DNA as directed by the probation officer.
6)  ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7)  ☐  You must participate in an approved program for domestic violence. *(check if applicable)*
You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page

## B.    STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1)  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2)  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3)  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4)  You must answer truthfully the questions asked by your probation officer.
5)  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6)  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7)  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change.  If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8)  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

**JA127**

Sheet 4 - Judgment in a Criminal Case with Supervised Release (Rev. 12/2019)                                    Judgment Page 5 of  7

**DEFENDANT: John Arthur Wiggins**                                    CASE NUMBER: PX-8-22-CR-00430-001

1) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
2) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
3) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
4) If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
5) You must follow the instructions of the probation officer related to the conditions of supervision.

## C.    SUPERVISED RELEASE
## ADDITIONAL CONDITIONS

☒ **SPECIAL ASSESSMENT**
You must pay the $300.00 special assessment.

☒ **DRUG TREATMENT**
You must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

☒ **SUBSTANCE ABUSE TESTING**
You must submit to substance abuse testing to determine if you have used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods.

☒ **MENTAL HEALTH TREATMENT**
You must participate in a mental health evaluation and, if deemed necessary, you must participate in a mental health treatment program treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

**U.S. Probation Office Use Only**

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

**JA128**

Sheet 5, Part A - Judgment in a Criminal Case with Supervised Release (Rev. 12/2019)                                         Judgment Page 6 of 7

**DEFENDANT: John Arthur Wiggins**                                    CASE NUMBER: PX-8-22-CR-00430-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 5B.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $300.00 | N/A | Waived | N/A | N/A |

☐  CVB Processing Fee $30.00

☐  The determination of restitution is deferred until _____.  An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | $.00 | |

**TOTALS**                     $_____     $    $0.00_____

☐  Restitution amount ordered pursuant to plea agreement _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐  the interest requirement is waived for the   ☐  fine   ☐  restitution

   ☐  the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**JA129**

Sheet 6 - Judgment in a Criminal Case with Supervised Release (Rev. 12/2019)                                                      Judgment Page 7 of  7

**DEFENDANT: John Arthur Wiggins**                                           CASE NUMBER: PX-8-22-CR-00430-001

# SCHEDULE OF PAYMENTS

Payment of the total fine and other criminal monetary penalties shall be due as follows:

**A**  ☒  **$300.00 Special Assessment in full immediately;**

**B**  ☐  $_____ immediately, balance due (in accordance with C, D, or E); or

**C**  ☐  Not later than _____; or

**D**  ☐  Installments to commence _____ day(s) after the date of this judgment.

**E**  ☐  In _____ (*e.g. equal weekly, monthly, quarterly*) installments of $_____ over a period of _____ year(s) to commence when the defendant is placed on supervised release.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Unless the court expressly orders otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Bureau of Prisons Inmate Financial Responsibility Program, are to be made to the Clerk of the Court.

☒ **NO RESTITUTION OR OTHER FINANCIAL PENALTY SHALL BE COLLECTED THROUGH THE INMATE FINANCIAL RESPONSIBILITY PROGRAM**.

If the entire amount of criminal monetary penalties is not paid prior to the commencement of supervision, the balance shall be paid:

☐  in equal monthly installments during the term of supervision; or

☐  on a nominal payment schedule of $_____ per month during the term of supervision.

The U.S. probation officer may recommend a modification of the payment schedule depending on the defendant's financial circumstances.

Special instructions regarding the payment of criminal monetary penalties:

☐  Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
   See attached Order of Forfeiture

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**JA130**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  22-CR-0430 PX** |
| | : | |
| **JOHN ARTHUR WIGGINS** | : | |
| | : | |
| **Defendant.** | : | |

---

### NOTICE OF APPEAL

Notice is hereby given that John Arthur Wiggins, the Defendant in the above-captioned case, hereby appeals to the United States Court of Appeals for the Fourth Circuit the judgment and sentence entered in this matter on September 7, 2023. While the undersigned counsel was retained in the District Court, Mr. Wiggins is indigent and requests the appointment of counsel from the Fourth Circuit's Criminal Justice Act panel to represent him on appeal.


Date: September 21, 2023                    _/s/_____
                                                                   John M. McKenna
                                                                   Bar Number 14894
                                                                   Brennan, McKenna & Lawlor, Chtd.
                                                                   6305 Ivy Lane, Suite 700
                                                                   Greenbelt, Maryland 20770
                                                                   301.474.0044
                                                                   jmckenna@brennanmckenna.com

### CERTIFICATE OF SERVICE

I hereby certify that on this day, September 21, 2023, a copy of the foregoing was sent via ECF/email to the United States Attorney's Office for the District of Maryland.


___/s/_____
John M. McKenna

1

**JA131**